MAY THORNE BRANTINGHAM, Respondent, *v.* EUNICE E. HUFF, Individually and as Executrix of JOSEPH THORNE, Deceased, Appellant, Impleaded with Others.

EVIDENCE — PAROL EVIDENCE INADMISSIBLE TO VARY A COMPLETE WRITTEN INSTRUMENT. An indenture of adoption executed under seal on the 21st day of December, 1863, by the adopting parents, the mother, and a superintendent of the poor in behalf of the child, upon which was indorsed the consent and approval of the board of commissioners of public charities and corrections of the city of New York, by which the child was adopted for sixteen years and one month, containing provisions pointing out the duties of the child and the adopting parents, each to the other, and an agreement to cause her to be instructed in reading, writing and arithmetic, in the trade and mystery of housekeeping and of plain sewing and to provide her with sufficient meat, drink, apparel, mending, lodging and washing, together with all necessary and proper medical attendance and nursing and the utensils to keep her healthy and cleanly, and upon the expiration of the term, viz., upon her arrival at the age of eighteen years, to give her a new Bible and a new suit of clothing in addition to her old ones in wear, and to report to the commissioner once in each year the character and condition of the girl, with a covenant of faithful performance, cannot be varied and enlarged by evidence of a verbal agreement made by the adopting father at or before the execution of the instrument to the effect that he would make the child his heir at law and next of kin and upon his death would give her his property.

. *Brantingham* v. *Huff,* 67 App. Div. 621, reversed.

(Argued May 17, 1902; decided March 6, 1903.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered

December 28, 1901, affirming a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*David B. Hill, W. P. Prentice* and *R. K. Prentice* for appellant. The written agreement of December 21, 1863, known as the indenture, controls the rights and obligations of the plaintiff and her mother on the one hand and of the deceased on the other hand, and parol evidence was not admissible to contradict, enlarge or vary its terms and provisions. (*Stowell* v. *G. Ins. Co.,* 163 N. Y. 298; *Trustees, etc.,* v. *Lynch,* 70 N. Y. 440; *Hall* v. *Beston,* 26 App. Div. 105; *Witty* v. *Matthews,* 52 N. Y. 512; *Mayor* v. *Price,* 5 Sandf. 542; *Kabus* v. *Frost,* 18 J. & S. 72; *Vilas* v. *McBride,* 62 Hun, 324; *Thomas* v. *Scutt,* 127 N. Y. 133; *House* v. *Walch,* 144 N. Y. 418; *Engelhorn* v. *Reitlinger,* 122 N. Y. 76.) The trial court committed a reversible error in admitting the testimony of the plaintiff's mother, who was an incompetent witness under section 829 of the Code of Civil Procedure. (*O'Brien* v. *Wieler,* 140 N. Y. 281; *Dutton* v. *Poole,* 2 Lev. 210; *Matter of Dunham,* 121 N. Y. 575; *Matter of R. A. Co.,* L. R. [25 Ch. Div.] 104; *Matter of E. E. Co.,* L. R. [16 Ch. Div.] 125; *Durnheer* v. *Rau,* 135 N. Y. 217; *Buchanan* v. *Tilden,* 158 N. Y. 109; *Godine* v. *Kidd,* 64 Hun, 585; *Erwin* v. *Erwin,* 54 Hun, 166; *Winne* v. *Winne,* 166 N. Y. 263.)

*Alexander Thain* and *Burton Thompson Beach* for respondent. The terms of the written indenture, although apparently terminating the relations between the parties when the plaintiff arrived at the age of eighteen years, worked no abrogation of such rights and duties towards each other as were not defined in the written instrument. (*Simmons* v. *Burrell,* 8 Misc. Rep. 388.) Respondent's mother was a competent witness on her behalf as to the terms of the agreement made with Mr. Thorne. (*Healy* v. *Healy,* 55

App. Div. 315; 166 N. Y. 624; *Godine* v. *Kidd*, 64 Hun, 685.)

HAIGHT, J. This action was brought to compel the specific performance of a contract alleged to have been made by Joseph Thorne and his wife, with one Mary Lillie Lee, the mother of the plaintiff, in the city of New York on the 21st day of December, 1863, for the adoption by said Thorne and wife of the plaintiff, who was then an infant of the age of one year and eleven months.

The complaint alleges that Thorne and his wife agreed to consider the plaintiff as their heir at law and next of kin, and that at their death she should have such property as they might then have to dispose of; that thereupon a written contract of adoption was drawn and executed between the mother of the plaintiff, Thorne and his wife, and one George Kellock, superintendent of the poor, who signed for and on behalf of the infant, the plaintiff herein, with the consent and approval of the board of charities and correction indorsed thereon. Performance of this contract is alleged on behalf of the plaintiff; and further that Joseph Thorne died in April, 1897, leaving a last will and testament, executed on the 23d day of July, 1896, which had been duly admitted to probate, in which he devised all of his real estate to his nieces, Bessie, Louise and Martha Jackson, and bequeathed a legacy of $1,000.00 to his friend Dr. Willard Parker Beach, and all of the residue and remainder of his estate to the defendant, Eunice Eleanor Huff, appointing her and his friend Beach executrix and executor of his will.

The complaint further alleges that the said Joseph Thorne formed the acquaintance of the defendant Eunice E. Huff in May, 1895, and that shortly thereafter he became of unsound mind, and so continued until the time of his death; that the defendant Huff acquired an improper influence over him, separated him from his wife, and would not permit him to be visited by the plaintiff or his friends, and that said Huff procured him to purchase and deed to her two parcels of real

estate specifically described, and to give to her the custody of his personal property amounting to "several hundred thousand dollars," and to bequeath the same to her by his last will and testament. It is alleged that this was done in fraud of the plaintiff's rights, under her contract.

The trial court in its decision confirmed the devise of the real estate by Thorne to his nieces and of the legacy of $1,000.00 given to Beach, but held that the bequest of the personal property to the defendant Huff, as well as the conveyance of the two parcels of real estate mentioned, was void; and judgment was ordered to be entered against her requiring her to convey and turn over such real estate, together with the personal property of Thorne, to the plaintiff, who, under the contract, was entitled thereto. It appears that Mrs. Thorne died before her husband, Joseph Thorne, and that he had no children or heirs at law other than the nieces already referred to. Upon the trial of the action the plaintiff, in order to establish her cause of action, read in evidence the deposition of her mother, which she had procured to be taken upon commission in London, England, in which it appears that at the time the plaintiff was adopted by the Thornes in 1863, the mother was living in New York and was sick and without means; that while in this condition she was visited by Mr. and Mrs. Thorne. She, then lying ill in bed, and in the presence of Dr. Beach who was then attending upon her, states that the following conversation took place: "I said to them, you seem to be very nice people but you are only working people, and I would rather have people in a better position to bring up the child. Dr. Beach thereupon said, I might rest quite contented that Mr. Thorne was much better off than I had any idea of, and that they were very estimable people, although he said Mr. Thorne was not a member of the Episcopal church. Then Mr. Thorne said, 'you will find that May will be well taken care of in every possible way. She will have everything that is ours, and should I die first, I will see that May is left well off. We have no children of our own and no relations to leave my money to and she will be

exactly treated in every way as if she were our own child.'
Mrs. Thorne acquiesced exactly in everything her husband
said.    *    *    *    She did not say much.    She was a very
silent woman, a woman of very few words.    After hearing
what they had said, and on Dr. Beach's recommendation, I
told the Thornes that they might have May, who was incor-
rectly styled in this and other interrogatives as Mary.    When
I had given my verbal consent, Dr. Beach said that there
would have to be a legal paper drawn up and signed by all
parties concerned.    Then Mr. and Mrs. Thorne and Dr.
Beach went away."

In answer to cross interrogatory she further states that she
signed the indenture, under which Thorne and his wife
adopted May, and thinks that it was witnessed by Dr. Beach
and that it was executed some days after the conversation
alluded to.    She does not remember that George Kellock nor
Simeon Draper were present at the interview.    Before reading
the deposition above quoted, the defendant objected to it as
incompetent under the Code, as relating to the transaction
between the witness and the testator and as generally incom-
petent and irrevelant.    This objection was overruled and an
exception was taken by the defendant.    After it was read the
defendant moved to strike out the entire answer, it being
apparent that it was but a preliminary verbal agreement fol-
lowed by a complete written agreement which embodied the
understanding between the parties.    This motion was denied
and an exception taken.    A motion was also made to strike
out of the answer the following words : " She will have every-
thing that is ours, and should I die first, I will see that May is
left well off," as not being within the allegations of the com-
plaint.    This motion was denied and an exception also
taken.

The indenture or contract alluded to in the deposition
appears to have been drawn on a printed form or blank in use
by the commissioners of charities by the filling in of the
names and dates, etc., in the blank spaces left therefor.    It
contained provisions by which May Lee, aged one year and

eleven months, was adopted by Joseph Thorne and Elizabeth, his wife, who resided at No. 40 Fifth street in the city of New York for the period of sixteen years and one month next ensuing, thus making the child eighteen years of age. It contained provisions pointing out the child's duty to the Thornes, and also other provisions prescribing the duty of the Thornes to the child ; in which they undertook and agreed to cause her to be instructed in reading, writing and arithmetic, and also in the trade and mystery of housekeeping and of plain sewing, and to provide her with sufficient meat, drink, apparel, mending, lodging and washing; together with all necessary and proper medical attendance and nursing, and the utensils and articles required to keep her healthy and cleanly ; and upon the expiration of the term, that is, upon her arrival at the age of eighteen years, Thorne was to give her a new Bible and a new suit of clothing in addition to her old ones in wear. He further agreed to report to the commissioner of public charities and correction, once in each year, the character and condition of the girl. It further contained a covenant of faithful performance, and was executed on the 21st day of December, 1863, under seal, by May Lillie Lee, Joseph Thorne, Elizabeth Thorne and George Kellock, superintendent of the poor, for May Lee, and witnessed by H. W. Boswell. Upon this instrument, under date of New York, December 23d, 1863, was indorsed the consent and approval of the board of commissioners of public charities and correction, signed by S. Draper, president, and attested by Isaac Bell, secretary.

Numerous questions have been raised and discussed upon the argument of this appeal, but in our consideration of the case we shall limit our discussion to the competency of the oral evidence of the plaintiff's mother, under which the plaintiff claims to have established the contract alleged in the complaint.

Under the Laws of 1873, chapter 830, provisions were made for the adoption of minors by adult persons under which the child became entitled to all of the rights and subject to all of

the duties of the relation of parent and child, except the right of inheritance. But, subsequently, under the Laws of 1887, chapter 703, this provision was amended so as to confer upon children thereafter adopted the right of inheritance. These provisions remained in force until the enactment of the Domestic Relation Law, chapter 272, Laws 1896, sections 60 to 68. It is thus apparent that the contract of adoption did not operate to give to the plaintiff the right of inheritance of the property of which her foster parents died possessed. (*Matter of Thorne*, 155 N. Y. 140.) The plaintiff's right, therefore, to recover in this action must rest upon the alleged oral contract. The contract as found by the trial court is that Joseph Thorne " at the time and place in the complaint stated, made an agreement with the widowed mother of the plaintiff and for the benefit of the plaintiff, then an infant, whereby said Joseph Thorne undertook and agreed upon sufficient consideration to devise and bequeath all his real and personal property to the plaintiff." Assuming this to be the contract, as we must under the unanimous affirmance of the Appellate Division, we find the trial court disregarding it by confirming the devise under the will of the real estate to the testator's nieces, and also of the bequest of the $1,000.00 to his friend Beach. In order to confirm these dispositions of his property the trial court must have been satisfied that he was at the time sane and possessed of sufficient capacity to make a will.

As we have seen, the contract was made on the 21st day of December, 1863, over thirty-nine years ago. The plaintiff's mother is the sole person who has given us an account of that transaction. And what is that account? She testified that Mr. Thorne said, " you will find that May will be well taken care of in every possible way." That expression undoubtedly referred to her care and maintenance during the time that they were bringing her up to the period of eighteen years of age. Then follows the statement, " she will have everything that is ours." This statement evidently referred to the same period of time during their joint lives in which she was to

have the use of everything that they had for use in their family. Then he is claimed to have said, "should I die first, I will see that May is left well off. We have no children of our own and no relations to leave my money to, and she will be treated in every way as if she were our own child." The trial court has made no finding as to whether or not the plaintiff was left well off. Thorne had built her a house and Mrs. Thorne had remembered her in her will, but as to the extent that she had been provided for we are not advised. The statement of Thorne to the effect that he had no relations was not strictly true, for it appears that he did have nieces. His statement to the effect that she would be treated in every way as if she were his own child does not necessarily import a promise to devise all of his real estate and personal property to her, for a parent may in the exercise of his judgment, by last will and testament, cut off his own child and deprive him of the right to inherit any part of his estate.

Again, we have the written contract executed after the conversation took place as detailed by the mother, drawn in pursuance of the statement of Dr. Beach made after the oral arrangement testified to, to the effect that "there would have to be a legal paper drawn up and signed by all the parties concerned." This paper limits the time during which the relation between the Thornes and the plaintiff was to continue to the period of sixteen years and one month, that being the time that she would arrive at the age of eighteen years. It did not continue their relations longer. The duties of Thorne to the child are fully specified, including what should be given to her upon her arrival at that age. It appears to be full and complete, and when we recall the statement of Dr. Beach, immediately following the oral agreement, it would seem that the parties must have intended to have incorporated in the written document the agreement made. We have thus analyzed the testimony of the plaintiff's mother and called attention to the contract for the purpose of showing that the case is brought within the rule of law, which, we think, it is our duty to invoke in this case, and that is, that the oral agreement testi-

fied to by the mother must be deemed merged in the written contract, and, so far as her evidence tends to impeach, change or alter that instrument, it was incompetent.

The cases chiefly relied upon by the plaintiff in the support of her contention are those of *Winne* v. *Winne* (166 N. Y. 263) and *Healy* v. *Healy* (166 N. Y. 624). In the *Winne* case the agreement to make the child a sole heir and to give him all the property was embraced in a written contract. In the *Healy* case there was no written contract, but in that case we were precluded from a review of the evidence by reason of the unanimous affirmance of the judgment by the Appellate Division. It was affirmed in this court upon the opinion delivered in the *Winne* case, and in that case Martin, J., concludes his opinion for affirmance of the judgment, under the peculiar circumstances of that case, by remarking, " Yet, it must not be regarded as an authority for maintaining such an action under different circumstances or upon other proof." It will readily be seen that these cases have no bearing upon the legal question now presented. In neither of those cases was there an oral agreement which could be merged into a written agreement, or an oral agreement that attempted to vary the terms of the written agreement.

We now have a case raised under different circumstances and based upon other proof than that under which the *Winne* case was disposed of. In the face of the instrument by which the mother surrendered the custody and control of the plaintiff for a limited period only, and Thorne undertook to adopt her and take care of her for such period, evidence was admitted of a verbal agreement made at or before the execution of the contract under which Thorne is claimed to have agreed to make the child his heir at law and next of kin, and upon his death to give her such property as he had to dispose of. The effect of this was to enlarge the obligation of Thorne from that undertaken by him in the written agreement, and to give to the mother the right to reclaim her child on her arrival at the age of eighteen years, and before she had reached her majority. This, we think, cannot be sanctioned.

In order to bring a case within the rule permitting parol evidence to complete a written agreement, it is essential that the writing must appear upon inspection to be an incomplete contract, and the parol evidence must be consistent with and not contradictory thereof. But when the written instrument upon its face appears to be complete, containing mutual obligations to be performed by the parties, parol evidence is inadmissible to vary its provisions. This we deem to be the settled rule of this court as to the question involved in this case. This was the effect of our decision in the case of *Thomas* v. *Scutt* (127 N. Y. 133), in which the cases upon the subject were very fully collected and discussed. Since then the rule has been repeated and adhered to in *House* v. *Walch* (144 N. Y. 418); *Case* v. *Phœnix Bridge Co.* (134 N. Y. 78); *Stowell* v. *Greenwich Insurance Co.* (163 N. Y. 298), and *Dady* v. *O'Rourke* (172 N. Y. 447).

We consequently conclude that the testimony given by the mother of the plaintiff tending to enlarge and vary the contract was improperly received in evidence, and that the judgment should be reversed and a new trial ordered, with costs to abide the final award of costs.

BARTLETT, J. (dissenting). In a record containing nearly eight hundred pages of printed testimony, covering over twenty-three hundred folios, it would not be profitable for a single dissenting judge to attempt anything like an adequate presentation of the case as argued by the respondent on this appeal. I deem it, however, proper to state, as briefly as possible, the salient points presented to the court.

In 1863, the mother of this plaintiff, the young wife of a former officer in the English army, came to this country with her husband, who left her with a daughter less than two years old, in the city of New York, while he made a business trip to the Pacific coast. The husband while thus engaged met with an accidental death, leaving his widow stranded in the city of New York, prostrated, ill and penniless. The record discloses that she was in charge of the commissioners of

charities and corrections and receiving the medical attendance of a coroner.

This widow, under the stress of these circumstances, parted with the custody of her infant daughter, under an agreement made with one Joseph Thorne, the wife of the latter being present when it was made. It appears that the Thornes were childless and anxious to adopt this infant and rear her as their own child.

The agreement which is sought to be specifically performed in this action by the adopted child, at the time of instituting this suit a wife and mother, was made in the sick room of her mother in December, 1863. According to the testimony of plaintiff's mother, a portion of the agreement was written and a part thereof was verbal.

It appears upon the face of the indenture of adoption, which is the written portion of this agreement that the consent of the commissioners of charities and corrections in the city of New York was, for some reason, deemed necessary, as it is made a part thereof. This indenture was drawn up on the old-fashioned apprenticeship blank, changed to suit the purposes of the occasion, and is evidently the awkward work of laymen, there being no evidence that a lawyer was present.

In the instrument this girl of tender birth is made to covenant that she will not absent herself day nor night from her parent's service without his leave, or frequent alehouses, taverns or playhouses, and in all things behave herself as a faithful child should during said term. The parent is made to covenant that he will teach the child the trade and mystery of housekeeping and plain sewing, and procure and provide for her sufficient meat, drink, apparel, etc.

It is further provided that when the child reaches the age of eighteen years she will receive a new Bible and a new suit of clothes; and in the meantime there was to be an annual report to the commissioners of public charities and corrections as to the character and condition of the child.

It is true the plaintiff's mother testified in this case by deposition taken in England, where she then resided, nearly

thirty-five years after this agreement was made. When the reason for this action, begun in October, 1897, is explained, this delay will appear neither unusual nor suspicious. The record discloses that the mother and daughter exchanged letters during the intervening years.

We have here findings of the trial court, unanimously affirmed by the Appellate Division, which fix, for the purposes of this appeal, the terms of this agreement.

The trial court found that Joseph Thorne undertook and agreed, upon sufficient consideration, to devise and bequeath all his real and personal property to the plaintiff; that he neglected so to do, in that by his last will and testament he left nothing to this plaintiff.

The majority of the court rest their decision upon the technical objection and exception of the appellant to the introduction of parol evidence, on the ground that the discussion of the parties at the date of the agreement, made at the bedside of the plaintiff's mother, resulted only in the execution of the indenture already referred to, and that such evidence could not be received to contradict or vary its terms.

Any examination of the sufficiency of the parol evidence, to establish the agreement found by the trial court, is forbidden by the unanimous decision.

The story told by the mother of the plaintiff in stating the terms of the agreement actually made, according to the findings of the trial court, has received a practical construction by the acts of the parties extending over a period of about thirty years.

Joseph Thorne, when this plaintiff was about nine years of age, made a will in which he left her all his property, and between that date and 1892 he, by several testamentary acts, provided for her amply.

When the plaintiff was about seventeen years of age, she contracted a marriage, which was opposed by the Thornes only upon the ground of her extreme youth. For a short time after this marriage there was a slight estrangement between the Thornes and their adopted daughter, but at the

end of that period Joseph Thorne erected a house on a part
of the lot on which his own mansion stood, with no interven-
ing fence, and invited the plaintiff with her husband and
child to occupy it, which they did, and from that time until
the year 1892 the plaintiff was treated with all the considera-
tion which had been extended to her in the past.

An imposing array of facts corroborates the agreement, as
testified to by the plaintiff's mother, and we are, therefore,
brought to the legal question whether the indenture, to which
reference has already been made, was the sole result of the
convention of the parties, held at the bedside of the plaintiff's
mother in December, 1863.

The familiar rule of law is pointed out in the prevailing
opinion, that where a written agreement is obviously incom-
plete and the parol evidence offered is consistent therewith, and
not contradictory thereof, it may be introduced.    It is argued
that to sustain the agreement as found violates this rule.

In order to determine whether parol evidence is competent
to help out a written instrument, which is alleged on the one
hand to embody the entire contract, and on the other to be
only a portion of it, it is always necessary to examine the sur-
rounding circumstances at the time of its execution.

In view of the facts in this case already narrated, and
which cannot now be controverted by reason of the unanimous
decision of the Appellate Division, it appears that the very
obvious reason for the execution of this crude indenture was
to secure the consent of the commissioners of charities and
corrections, under whose care plaintiff's mother and child in
their hour of distress found themselves.

To say that this mother, who was parting with the custody
of this daughter for all time, rested satisfied with the pro-
visions made for her by this indenture, approaches the absurd.
Thirty years of practical contruction demonstrates that this
agreement was largely verbal, as the mother testifies, and
made provisions for the child that bore ample fruit in after
years.

The consent of the commissioners of charities and correc-

tions, which is a part of the indenture, renders it clear upon the face thereof that it is incomplete and that the other terms of the agreement, resting in parol, were not inconsistent with it, but tend to reveal the exact situation at the time the agreement was made. I have already stated that the reason is clearly disclosed in the record why the mother of the plaintiff testified to this agreement so many years after it was made.

I do not feel justified in this dissenting memorandum to deal in detail with the facts that rendered the last five years of the lives of Joseph Thorne and wife a pathetic tragedy. In October, 1892, the sole appellant in this court entered the life of Joseph Thorne. From that hour she seemed to have dominated him, and his subsequent actions disclose complete infatuation. The appellant, at the time this acquaintance began, resided in the city of New York, but in about four months after October, 1892, Joseph Thorne, who resided on Staten Island, bought a house in the vicinity of his own for the sum of six thousand dollars, and placed the title in the appellant, who shortly thereafter moved into the same with her husband, the latter being employed in a drygoods store in the city of New York at a salary of eighteen dollars a week. Shortly thereafter the appellant took up her residence in the Thorne mansion.

In the year 1895 articles of separation were executed between Joseph Thorne and his aged wife, he giving her $575.00 in cash and an allowance of twenty-five dollars per week during the remainder of her life, although his estate is valued at two hundred thousand dollars.

In January, 1896, Joseph Thorne purchased a house in Sing Sing, N. Y., for twenty-two thousand five hundred dollars, putting the title in the appellant. The latter, with her husband, moved at once into this new house, and Joseph Thorne went with them and remained there until his death in the following year. Mrs. Thorne sought refuge in the home of her adopted daughter, the plaintiff, and remained there until her death.

During the year 1896 Joseph Thorne transferred to the

appellant the greater part of a valuable personal estate, and also executed a will, in which she was the principal beneficiary. This will made no reference to the plaintiff, the adopted child of the testator.

The Thornes were not destined to long survive this wrecking of the old home; the wife died on the 23rd day of April, 1897, and her husband followed her to the grave in less than thirty days, dying at the house of the appellant in Sing Sing on the 4th day of May, 1897.

This action was begun a little later, in October, 1897, having for its object the specific performance of the agreement made in the year 1863 by plaintiff's mother for her benefit, and to recover the possession of real and personal property, of which appellant had become possessed, in the manner fully set forth in the findings of the trial court, unanimously affirmed by the Appellate Division, and not to be questioned here.

The trial court also found that between the years 1892 and 1897 the appellant, with the knowledge of this agreement and with the intent to defraud the plaintiff of all her interests therein and of the benefit thereof, and by the use of undue influence, fraudulently exerted, procured the said Joseph Thorne, in his lifetime, to transfer and deliver over to her, without consideration, all his personal property and certain real estate.

On the findings an interlocutory judgment was entered requiring the appellant to transfer the personal property and convey the real estate to the plaintiff. A referee was also appointed, under whose supervision and directions the transfers and conveyances were to be made, and referring it to him to ascertain and report what other property and moneys than those specified the plaintiff was entitled to recover from the appellant under the decision of the court.

It should be remarked that certain provisions made by Joseph Thorne in his last will and testament for his nieces and a legacy to a friend were allowed to stand by the judgments of the Special Term and Appellate Division.

It appears that the appellant departed the jurisdiction of the court, and the accounting before the referee under the interlocutory judgment proceeded without her, as it was impossible to secure her presence at the various hearings.

It will thus be seen that the issues in this case are narrowed down to a contest between the adopted daughter of the Thornes and this appellant, as the will of Joseph Thorne is carried out in every other respect.

The appellant stands before the court as having obtained this property without consideration by fraud and undue influence and with the intention of defeating plaintiff of her rights under an agreement which had been fully recognized by Joseph Thorne for a period of thirty years.

I am free to admit that in a contest between a plaintiff, in every way worthy, and a defendant, who stands thus convicted by findings that are not to be disturbed on this appeal, if the well-settled rules of law render it impossible for the court to permit a recovery, the hardship of the situation ought not to bar a determination consistent with legal principles. It is because I believe the way is absolutely clear to do exact justice in this case that I am unable to agree with the decision that this court is about to make.

In view of the present state of the law, it is no longer an open question as to the enforceability of an agreement like the one at bar.

Much has been said as to the propriety of the courts decreeing specific performance of agreements resting in parol evidence concerning transactions that occurred many years before the trial. It is sufficient to say that each case must be determined on its peculiar facts, and in that way justice will be done. ( *Winne* v. *Winne,* 166 N. Y. 263 ; *Healy* v. *Healy,* 166 N. Y. 624; 55 App. Div. 315 ; affirmed in this court on opinion in *Winne* v. *Winne, supra.*) A motion for reargument was denied in the *Healy Case* (167 N. Y. 572).

A number of other cases might be cited on this point, but I content myself with the latest utterances of the court.

We have here involved no rights of those representing the

testator's blood, and the case presents none of those features which have led judges and lawyers to question the propriety of enforcing agreements like the one now under consideration; but the sole bald issue is, in my judgment, whether this daughter of the Thornes' adoption shall recover property to which she is entitled in law and justice, or whether the appellant, with full knowledge of the existing agreement, and with fraud and undue influence, shall wrest it from her.

I vote for affirmance.

PARKER, Ch. J., GRAY, O'BRIEN and VANN, JJ., concur with HAIGHT, J.; BARTLETT, J., reads dissenting opinion; CULLEN, J., not sitting.

Judgment reversed, etc.