NATIONAL MINERAL CO. et al. v. A. L. STERNE CO.

No. 31987. Feb. 19, 1946.

Rehearing Denied Dec. 10, 1946.

*174 P. 2d 922.*

Pierce, McClelland, Kneeland & Bailey, of Oklahoma City, and A. A. Rubinson, of Chicago, Ill., for plaintiff in error.

A. C. Saunders, of Tulsa, for defendant in error.

PER CURIAM. This is an action brought by A. L. Sterne Company, a corporation, against National Mineral Company, a corporation, and Helene Curtis Industries, to recover damages for breach of an alleged oral agreement under which it is contended that plaintiff was given exclusive right to sell for a period of one year in Tulsa county and surrounding territory certain products manufactured by defendant.

Plaintiff in its petition alleges that some time prior to March, 1943, defendant was engaged in selling to dealers throughout the country certain beautyshop and barbershop supplies; that on or about said date it had perfected a process for fixing or setting permanent waves in women's hair without applying heat or electricity; that this process was known as the Helene Curtis Cold Wave Process; that on April 3, 1943, one Al Gore, the agent and duly authorized representative of defendant entered into an oral contract with it under the terms of which it was appointed exclusive dealer for a period of one year to handle and distribute its products throughout the city of Tulsa and surrounding territory; that defendant thereafter breached said contract and appointed another dealer for said territory, all to its damage in the sum of $2,995, for which it prayed judgment.

Defendant in its answer denied that it entered into such contract with plaintiff and affirmatively pleaded that if its agent, Al Gore, entered into such contract, he was without authority so to do.

The trial resulted in a verdict and judgment in favor of plaintiff. Defendant has appealed and relies for reversal upon the following assignments: (1) error of the court in overruling its motion to exclude certain evidence offered by plaintiff; (2) error in refusing its request for a directed verdict.

The evidence discloses that defendant had for some time been engaged in selling to dealers throughout the country certain beautyshop and barbershop supplies; that in 1943 it perfected the Helene Curtis Cold Wave Process; that it appointed agents for introducing and demonstrating its new product and for the purpose of soliciting customers for the sale of its products.

A. L. Sterne, president of the plaintiff company, in substance, testified: He first met Mr. Gore on March 20, 1943, and at that time entered into an agreement with him to hold a demonstration for the purpose of demonstrating to beauticians the use of this new process. This demonstration was made at the Mayo Hotel in the city of Tulsa on April 3, 1943; that immediately after such demonstration he entered into an oral agreement with Mr. Gore whereby plaintiff was appointed exclusive dealer for one year to handle and distribute its products in the city of Tulsa and surrounding territory. He was informed at that time by Mr. Gore that he had appointed an exclusive dealer at Oklahoma City and other places; that it would be necessary for him to obtain franchises from beauticians for using the new cold wave process and submit such franchises to defendant for approval before he could sell the product to them; that Mr. Gore informed him that before he could act as dealer it

would be necessary that he obtain a franchise from the company and that proper papers for such purpose would follow; that thereafter he received from the company a written contract for execution, which contract he thereafter signed and returned to defendant company. The contract was identified by him and introduced in evidence by plaintiff. The contract recites, among other things, that it was entered into by and between defendant, referred to and designated as manufacturer, and plaintiff, referred to and designated as dealer. Paragraph 1 provides:

"Manufacturer will sell to dealer at the Manufacturer's prices and terms in effect at the date of such sale all Helene Curtis Cold Wave Supplies which Dealer bona fide requires in the ordinary course and conduct of Dealer's business, provided that Dealer at the time of purchase is not in default under the terms of this Agreement."

It further provided minimum prices at which the dealer may sell its products and that defendant may at any time upon ten days written notice revise such minimum prices; that the dealer should only sell such products to beauticians possessing a franchise and license issued by defendant; that the dealer should at the request of defendant obtain such franchise and license agreement on the form provided by defendant in duplicate and submit such agreements to defendant for approval. The contract contained the following clause:

"No obligations not expressly specified herein are assumed by Manufacturer or Dealer."

The contract does not purport to grant to plaintiff the exclusive right to sell its products in a given territory nor that it shall remain in existence and operative for any definite period of time. It is silent as to these matters.

Mr. Sterne testified that he read and understood the contract before signing the same, and further testified:

"Q. You knew that agreement would be necessary to have signed? A. Yes, sir. That is one of the first things they did was to send that to me."

He, however, further testified he understood that the written contract was executed only for the purpose of carrying out his prior oral contract; that before and after he received the written contract he procured franchises from beauticians and submitted them to defendant for its approval and took orders for the sales of its products; that defendant recognized it as its dealer and filled its orders until the 10th day of May, 1943, at which time it was advised that the contract between it and defendant was terminated and that another dealer had been appointed for the city of Tulsa; that defendant gave as a reason for terminating relations with it that the business given was unsatisfactory and did not justify continuance of the relationship; that he thereafter wrote several letters to defendant in an effort to persuade it to rescind its action and to retain it as its dealer, but without success; but in none of these letters did he call the attention of the defendant to the fact that his company claimed to have an exclusive one-year dealer's contract for the handling of its products.

At the conclusion of plaintiff's evidence defendant moved to strike and exclude all of the evidence relating to the alleged oral agreement for the reason that under the evidence presented by plaintiff it appeared that the contract had been reduced to writing and that such evidence tended to vary and add to the terms of the written contract, and also demurred to the evidence. Both motion and demurrer were overruled.

Lewis P. Stein, president of the defendant company, and Mr. Gore, agent, testified that he, Gore, had no authority to enter into a contract giving any dealer the exclusive right to handle its products for any length of time, nor did he have authority to enter into such contract with plaintiff; that the only authority Mr. Gore had was to demon-

strate the use of this new process to beauticians, solicit customers and orders for the sale of such products, and submit such applications to defendant at its home office for approval. Mr. Stein further testified that he had no knowledge of such alleged oral contract with its agent, Mr. Gore, until this suit was filed. Mr. Gore denied that he ever entered into such contract with plaintiff. At the conclusion of all the evidence defendant again moved the court to exclude the evidence as to the oral agreement and requested the court to direct a verdict in its favor, which motion and request were overruled.

Defendant contends that evidence as to the oral agreement should have been excluded for the reason that it tended to vary and add to the terms of the written contract.

Plaintiff contends that the written contract was executed only for the purpose of carrying out the terms of the prior oral agreement; that the entire agreement was not reduced to writing and that the evidence was therefore properly admitted for the purpose of supplying such omission. It is, of course, true that where the entire agreement is not reduced to writing, parol evidence is admissible to supply the part omitted, but as to whether the written contract is complete must be determined from the contract itself together with the circumstances under which, and the purpose for which, it was executed.

In the case of Samuel H. Chute Co. v. Latta, 123 Minn. 69, 142 N. W. 1048, it is said:

"Where only part of the agreement is reduced to writing, it is competent to prove by parol any separate oral agreement on which the document is silent and which is not inconsistent with its terms. The criterion of the completeness of the writing is the writing itself, construed in the light of the circumstances under which, and the purpose for which, the writing was executed. It is not competent to lay the foundation for such oral evidence by oral testimony that only part of the agreement was reduced to writing, and then to prove by parol the part omitted. Tested by the rules, the written contract in this case cannot be held incomplete."

That case was an action brought to recover upon a written instrument for rent due. The defense was that there was a concurrent verbal agreement that in the event a corporation should be formed by defendant and the lease contract should be assigned to such corporation, defendant should be released from any further obligation under the contract. The court excluded the evidence as to the oral agreement. It was there contended as here that the written contract was only executed to carry out the terms of a prior verbal agreement and that the entire agreement was not reduced to writing. After declaring the rule to be as above stated, the court in that case further said:

"To allow a party to lay the foundation for such parol evidence by oral testimony that only part of the agreement was reduced to writing, and then prove by parol the part omitted, would be to work in a circle, and to permit the very evil which the rule was designed to prevent."

In the case of Warren v. Pulley, 193 Okla. 88, 141 P. 2d 288, we said:

"A written contract embodying the terms of a sale of real estate, and apparently complete on its face, precludes evidence of a prior or contemporaneous oral warranty of quality of the property covered by the contract."

In discussing the exceptions to the parol evidence rule we there said:

"The most satisfactory statement of the tests for the determination of this question, which we have found, is contained in a summary in the annotation in 70 A. L. R. 752, at page 770, as follows:

" 'By way of summary it may be said:

"(1) The parol-evidence rule precludes the admission in any case of parol or extrinsic evidence to show some other prior or contemporaneous agreement, inconsistent with or contradictory to the terms of the written contract, in the

absence of some one of the well-recognized exceptions to that rule, such as fraud, accident, or mistake; (2) if the writing is incomplete on its face, as where it is a mere memorandum omitting essential elements, parol or extrinsic evidence is admissible to show the omitted portions of the contract; (3) if the written contract is complete on its face, and contains the details of the agreement, parol or extrinsic evidence is inadmissible to add to a matter with which the writing deals, but the latter will be presumed to be complete on that subject; (4) in the case last mentioned, where the writing is complete on its face, parol or extrinsic evidence is admissible to prove an alleged agreement as to a matter on which the writing is silent—not to add to the terms of the written agreement, but to prove a separate and distinct agreement, though perhaps relating to the same subject-matter; (5) the test as to whether the alleged parol agreement is sufficiently distinct and separate so that the parol-evidence rule does not preclude its proof is primarily whether the parties intended the written contract to cover all of the matters embraced in their prior or contemporaneous negotiations, including that part omitted from the writing; (6) in determining this intent, the court should consider the 'closeness of the alleged parol agreement to the writing, the surrounding circumstances as well as the written contract itself, and what parties ordinarily might be expected to do under those circumstances as to inclusion of particular matters in the writing.' "

The Supreme Court of Minnesota, in the case of Thompson v. Libby, 34 Minn. 374, 26 N. W. 1, speaking of the parol-evidence rule, said:

"The rule forbids to add by parol where the writing is silent, as well as to vary where it speaks."

Tested by the above rule the written contract under the circumstances and evidence in this case cannot be held to be incomplete. The evidence discloses that the contract executed between the parties was a printed form contract adopted and used between the defendant and its dealers generally. There was no occasion to insert therein a clause expressly stating that it was not an exclusive contract granting exclusive territory nor that it was not to remain operative for any fixed length of time. It cannot be said that parties in executing such contract might ordinarily be expected to insert therein a clause expressly negativing the contentions here made. The trial court should have excluded the evidence relative to the oral agreement and should have sustained defendant's motion for a directed verdict.

Defendant also asserts that the evidence is insufficient to establish that its agent, Gore, had authority to enter into the alleged contract and its motion for directed verdict should also have been sustained for this reason. The view taken renders it unnecessary to determine this question.

The judgment is reversed and the cause remanded, with directions to enter judgment in favor of defendant.

GIBSON, C. J., HURST, V. C. J.; and RILEY, OSBORN, BAYLESS, and CORN, JJ., concur.