**Harry HICKS, Executor of the Estate of W. F. Simmons, deceased; and R. S. Moran, Executor of the Estate of Lenora J. Simmons, deceased, Appellants,**

v.

**Homer SIMMONS and Oscar Simmons, Appellees.**

No. 6156.

United States Court of Appeals
Tenth Circuit.

Oct. 29, 1959.

A. K. Little and L. D. Hoyt, Oklahoma City, Okl. (Ross Cox and William Fancher, Hollis, Okl., on the brief), for appellants.

Charles Hill Johns, Oklahoma City, Okl. (Gomer Smith, Jr., Oklahoma City, Okl., on the brief), for appellees.

Before MURRAH, Chief Judge, and PHILLIPS and PICKETT, Circuit Judges.

MURRAH, Chief Judge.

The plaintiff-appellees brought this suit against the respective estates of their adoptive parents for enforcement of an alleged oral contract to leave their property to them upon their death. Federal jurisdiction rests upon diversity of citizenship and requisite amount in controversy, both of which concededly exist.

The trial court decreed specific performance based upon a finding that the adoptive parents (W. F. Simmons and Annie Simmons) orally agreed that "if the natural father and sister would give up custody of the plaintiffs and make no objection to formal adoption proceedings; and if the plaintiffs themselves, who were then minors, would consent to being adopted, the Simmonses would give the plaintiffs a good home, educate them, and upon the death of the adoptive parents would leave their property to the plaintiffs"; and upon the further finding that the oral contract became fully executed with formal adoption and when the plaintiffs took the name of their adoptive parents, lived in their home, worked on their farm, and in all respects became their sons.

The appellants attack the judgment of the court, first, as resting upon a contract in parol which tends to vary or contradict the formal adoption which, under Oklahoma law, is "essentially a matter of contract * * *." Ronck v. Ronck, 203 Okl. 121, 218 P.2d 902, 904. The adoption order in our case is said to be the completely integrated contract between the parties with respect to matters of inheritance, and testimony tending to show a prior or contemporaneous oral agreement with respect to such matters violates the established parol evidence rule.

Oklahoma has codified the common law parol evidence rule by providing that "The execution of a contract in writing, whether the law requires it to be written or not, supersedes all the oral negotiations or stipulations concerning its matter, which preceded or accompanied the execution of the instrument." Title 15 O.S.A. § 137. Construing this rule, the Oklahoma court has embraced a summary of it in a treatise found at 70 A.L.R. 552, 570. See Warren v. Pulley, 193 Okl. 88, 141 P.2d 288; National Mineral Co. v. A. L. Sterne Co., 198 Okl. 37, 174 P.2d 922. And, synthesizing the summary, the Court has succinctly restated the rule to be that "In the absence of fraud, accident or mistake, evidence of a prior or contemporaneous oral agreement is inadmissible to vary the terms of a written contract apparently complete on its face, as to an element or matter with which the written contract deals, or as to a subject so closely bound to matter of written contract that parties would ordinarily be expected to have embodied it therein." Warren v. Pulley, supra, Court Syl. 1. And see IX Wigmore Evidence, 3rd Ed. § 2430; 3 Williston Contracts, § 631 et seq.

Making application of this rule, the ultimate question then is whether the formal adoption order is sufficiently complete on its face with respect to the matter of inheritance, or whether that subject is so closely bound to the subject matter of the order that the parties would ordinarily be expected to have embodied it therein.

The petition for adoption recited that petitioners have had the sole care and support of the minors since coming into their custody; that they were now supporting and educating them with the knowledge and consent of the relatives; and that they desired to adopt them "as their own children and assume the legal obligation of their care, support and education and to give them thereby the rights of inheritance from them." The children signed a written election and nomination of the petitioners "as our choice of adoption." The order of adoption recited: "The petitioners have filed in this court an agreement in writing, properly signed before the undersigned judge of this court, with the said minors, whereby and wherein they agree that the said minor children shall be by

them adopted and treated in all respects as their own lawful children should be treated, including the rights of support, maintenance, protection and education, and the rights of inheritance * * *." It was then adjudged, ordered and decreed that "the said petitioners W. F. Simmons and Mrs. W. F. Simmons adopt the said minor children, and that henceforth the said Homer Roy Ferguson and Oscar Kirk Ferguson shall be treated by them in all respects as their own lawful children should be treated, including the right of inheritance * * *."

While adoption is essentially a matter of contract between the parties, it is a creature of the statute, the purpose of which is to create and establish a family status in law, i. e. a parent-child relation as if ordained by natural law. Thus, the statute expressly provides that "If the court is satisfied that * * * the facts stated in the petition are true, and that the petitioner is of sufficient ability to bring up the child and furnish suitable nurture and education, and that it is fit and proper that such adoption should be made, a decree shall be made setting forth the facts and ordering that from the date of the decree the child shall, to all legal intent and purposes, be the child of the petitioner or petitioners * * *." Title 10 O.S.A. § 50. And that " * * * After adoption, the two shall sustain towards each other the legal relation of parent and child, and have all the rights and be subject to all the duties of that relation." Title 10 O.S.A. § 51. And furthermore, "A child so adopted shall be deemed, for the purposes of inheritance by such child * * * the child of the parents by adoption the same as if he had been born to them in lawful wedlock * * *." Title 10 O.S.A. § 52.

Beyond the establishment of the right of inheritance of the adopted child as a natural child, the statute imposes no duty whatsoever upon the adoptive parent to provide for the inheritance of the adopted child. As far as the statute is concerned, the adoptive parent is free to leave his property as he chooses, including the right to disinherit the adopted child the same as a natural one. And, while the parties were doubtless free to provide in the adoption order for the irrevocable inheritance by the adopted children, it is apparent on the face of the petition and order that they had no intention of so providing. The petition and order go no further than the minimum statutory requirements. And indeed, in the circumstances, we would not ordinarily expect them to do so. True, the petition and the order spoke of the right of inheritance, but only in the statutory sense of the rights of a natural child. In these circumstances we cannot say with assurance that the parties intended their oral agreement with respect to the matter of inheritance to be embodied in the adoption contract. The parol evidence rule does not forbid two contemporaneous contracts, one written and one oral, with respect to the same subject matter. It is enough if the two contracts can be made to stand together without the oral contract affecting the integrity of the written one. Ross v. Stricker, Okl., 275 P.2d 991; Starmer v. Mid-West Chevrolet Corp., 175 Okl. 160, 51 P.2d 786; Stone v. Spencer, 79 Okl. 85, 191 P. 197; Fredrick v. Christensen, 73 S.D. 130, 39 N.W. 2d 529; Cathcart v. Myers, 97 Kan. 727, 156 P. 751.

Our case is unlike Brantingham v. Huff, 174 N.Y. 53, 66 N.E. 620, where the adoption contract limited the time during which the parent-child relationship was to continue, and fully specified what the child was to receive upon the termination of that relationship. There the contract was full and complete with respect to inheritance and was clearly the embodiment of the agreement between the parties.

The oral contract is also attacked for insufficiency of law and fact in its consummation. The contention is that conceding the admissibility of the parol evidence, it is insufficient to meet the heavy burden of proving a contract of this kind, and furthermore is within the statute of frauds.

Oral covenants to leave property to another as compensation for personal services have been prolific sources of litigation. And, such contracts have been unhesitatingly enforced when the supporting evidence convinces the court of the existence of the contract beyond reasonable doubt, and the promisee is shown to have fully performed his end of the bargain. Usually the contract takes the form of an agreement to leave or devise property as compensation for filial services, affection, companionship and society. See cases collected Annotations, 69 A.L.R. 14; 106 A.L.R. 744. Others take the form of contracts to adopt a minor child and to leave to it the property of the adoptive parents upon their death. See cases collected Annotations, 142 A.L.R. 84; 171 A.L.R. 1315; 27 A.L.R. 1325.

█ Oklahoma has specifically recognized the enforceability of an oral contract for adoption, coupled with an agreement to leave the adoptive parents' property to the adopted child; see Eggstaff v. Phelps, 99 Okl. 54, 226 P. 82; Clemons v. Clemons, 193 Okl. 412, 145 P.2d 928; or to devise property to the promisee by will, Brooks v. Yarbrough, 10 Cir., 37 F.2d 527; provided of course the evidence is sufficiently clear and convincing, and the promisee has sufficiently performed his part of the contract. See Robinson v. Haynes, 147 Okl. 95, 294 P. 803; York v. York, Okl., 270 P.2d 656. And see also Cathcart v. Myers, supra; Fredrick v. Christensen, supra; Salomonsson v. Olofsson, 105 N.J.Eq. 87, 147 A. 116.

The court's findings are based upon testimony to the effect that the decedents were a middle-aged childless couple living on a large farm in Harmon County, Oklahoma. In 1924 they came in contact with Homer Ferguson, who was about fourteen years of age. They took him to their home where he lived and worked for about two years. They expressed a desire to adopt him, but he withheld consent until they agreed to also adopt his younger brother, Oscar, then living in Texas with his enfeebled father and older sister. In 1926, the Simmonses and Homer went to Texas to the home of Homer's older sister, and while there talked to Homer's father and sister about adopting the two boys. They promised the father and sister that if they would let them take the boys home and consent to adoption, "they would give them all of their property equally, everything they owned; and would take them and raise them and they could work there on the farm."

The natural father would not agree to the adoption and the Simmonses returned to Oklahoma with Homer. When, however, the father became seriously ill, he finally indicated his agreement to the adoption. In the summer of 1927, the Simmonses again went to Texas with Homer after the death of the natural father. At that time the Simmonses repeated their offer to leave their property in equal parts to the boys upon their death if the sister and the boys would agree to the adoption. The sister did agree and the Simmonses took both Homer and Oscar home with them, and soon thereafter adopted them by the formal proceedings. The two boys took, and have ever since retained, the name of their adoptive parents. They both lived and worked on the farm of their adoptive parents until they reached adulthood and were married. The adoptive mother died in 1935 and all the property descended to the adoptive father.

In 1937, in contemplation of remarriage, the adoptive father entered into an antenuptial agreement with his prospective wife, which recited that each of them had acquired and then owned certain real and personal property which they had individually earned and acquired in their lifetime, and which they desired "to protect for the interest of their own individual and present existing heirs." They accordingly agreed that neither of the parties would inherit from the other, but that each separate estate would be inherited by their respective heirs; that after the marriage, each of the parties would make and execute their own individual will, whereby

and wherein they would designate all of their own individual property to their heirs at law as they desired, and that a copy of each of the wills would be attached to the antenuptial agreement "for the purpose of a memorandum as to the contract betwen the parties * * *."

Soon after the marriage, the adoptive father had two wills drafted on different occasions, leaving his property to his adopted sons, but neither of these wills was ever formally executed. Several years later he caused to be drafted two or three other wills, only one of which is shown to be signed and witnessed. In each of these wills he recognized the antenuptial agreement with his second wife, and devised his property to his collateral heirs, leaving $5 each to his sons. His second wife finally executed a will in 1948, in which she referred to the contract of noninheritance and directed that her husband take nothing and devised her property to her children by a former marriage. Finally in 1956, Simmons executed the will which was admitted to probate on his death. He again took note of the antenuptial contract, but nevertheless directed that all of his estate be given to his wife, and that the adopted sons be given the sum of $5 each. Within a short time after his death, his second wife died. The father's will was admitted to probate over the protest of the adopted sons, and all of his property descended to the heirs of his second wife by virtue of her last will and testament. The trial court here has directed the respective executors of the W. F. Simmons and Lenora Simmons Estates to make appropriate transfers of all property of which Simmons died seized to the plaintiff-appellees, and to account accordingly.

■■ The oral testimony in support of the alleged agreement was resurrected after more than thirty years. And, it came from the lips of interested witnesses. But it was clear, definite and consistent. It convinced the trial court, who is the judge of the credibility of the witnesses and the weight and value it is to be given in cases like this. We cannot say that the court's appraisal of the witnesses and their testimony is clearly erroneous. And, we must also agree with the trial court that the found agreement was sufficiently performed by the promisees to overcome the ban of the statute of frauds.

The judgment is affirmed.