HEMPHILL CORPORATION, Appellee,

v.

GUY H. JAMES CONSTRUCTION COMPANY, Appellant.

No. 53068.

Court of Appeals of Oklahoma, Division No. 1.

May 13, 1980.

Rehearing Denied July 1, 1980.

Certiorari Denied Sept. 15, 1980.

Released for Publication by Order of Court of Appeals Sept. 18, 1980.

E. Daniel Doris, Tulsa, for appellee.

Thomas F. Hunt, Jr., Oklahoma City, for appellant.

---

5. *Security Bank & Trust Co. v. Fed. Nat'l. Bank & Trust Co. of Shawnee,* Okl.Ct.App., 554 P.2d 119 (1976).

ROMANG, Judge:

Guy H. James Construction Company (General Contractor) was preparing to submit a bid to construct a dam for the U. S. Army Corps of Engineers. It solicited a subcontract bid from Hemphill Corporation (Subcontractor), *inter alia*, to plug oil wells within the confines of the project according to the plans and specifications. Throughout the contract documents in the record, it is clear that the Corps of Engineers estimated there would be 27 wells plugged but the obligation was to plug them all, however many there may be. The Subcontractor submitted an oral bid of $4,400 per well. A similar figure was used by the General Contractor in its bid to the Corps but there is no evidence that the parties had contracted at this point. Subsequent to the bid letting, the General Contractor received a bid from a third party offering to plug the wells for $1,500 each. The General Contractor contacted the Subcontractor and asked it to reduce its $4,400 bid to $1,500. The Subcontractor orally agreed insofar as the first 27 wells were concerned but insisted on the $4,400 figure for each well in excess of 27. To this the General Contractor orally agreed.

Later the parties executed a written subcontract. The subcontract incorporated by reference the appropriate plans and specifications of the general contract, listed a contract price based in part on 27 wells at $1,500 and had customary general provisions covering extra work.

The parties' dispute concerns whether the Subcontractor was to receive $4,400 per each well plugged in excess of 27 or was to receive $1,500 per well. The Subcontractor sued to recover the excess amounts. After both parties filed motions for judgment where facts are not controverted under Rule 13 of Rules for the District Courts, the trial court denied the defendant's motion and granted plaintiff's motion. From this action, this appeal was taken.

The decisive issue on appeal is simply whether the written contract "supersedes," under 15 O.S.1971, § 137, the prior oral agreement, i. e. does the parol evidence rule preclude legal recognition of the admitted oral transaction. The parol evidence rule has been the subject of much controversy, especially as regards our instant question. It is provided in 15 O.S.1971, § 137 that "[t]he execution of a contract in writing, whether the law requires it to be written or not, supersedes all the oral negotiations or stipulations concerning its matter, which preceded or accompanied the execution of the instrument." Thus the parol evidence rule as understood in Oklahoma provides that a written contract "*supersedes* all the oral negotiations or stipulations concerning its matter" (emphasis added) which were prior or contemporaneous with the written contract. Since the written contract "supersedes" the prior parol agreement, the parol evidence rule is not a rule of evidence at all but a substantive rule of law providing priority for a subsequent written agreement covering the *same matter* as the prior or contemporaneous oral agreements.

This statutory standard leads to an important conclusion, supported by the caselaw and not disputed by the parties, that prior or contemporaneous oral agreements *not* "concerning ... [the] matter" of the subsequent written agreement are not covered by the statute and may be proven by parol evidence. This conclusion is usually stated in the form that the rule only forbids parol evidence of prior or contemporaneous oral agreements which contradict, vary, or are inconsistent with the writing and does not preclude oral agreements on collateral matters.

The difficulty with this conclusion lies not so much with instances where the oral agreements contradict or vary the writing but where the writing is silent on the subject of the oral agreement. Whether such an oral agreement is inconsistent with the writing depends on whether the parties intended the writing to be a completely integrated statement of their agreement or whether it was only intended as a partial integration. *Seal Oil Co. v. Roberson*, 175 Okl. 140, 51 P.2d 801 (1936); and *American Perforating Co. v. Oklahoma State Bank*, Okl., 463 P.2d 958 (1970).

The question then becomes how to determine whether the writing is intended to be a complete and integrated statement. Professor Corbin and the Restatement of Contracts (2d), Tentative Drafts 1-7, take the realist view that inasmuch as the question is one of intent, it should be subject to proof as intent normally is, i. e. by parol as well as otherwise. 3 Corbin on Contracts § 581, at 442, and Restatement of Contracts (2d) § 240(a). Professor Williston and the first Restatement of Contracts seem to take a markedly different view. The latter seem to suggest that, in the absence of an express provision in the writing that it is or is not a complete integration, the court should look to the writing itself. Where the writing appears incomplete, consistent additional terms may be proved by parol. But where the writing appears complete it is "deemed a total integration unless the alleged additional terms were such as might naturally be made and not included in the writing by parties situated as were the parties to the written contract." Calamari and Perillo, Contracts (2d Ed. 1977) § 3-3 at 105 citing 4 Williston §§ 638-639. See also Restatement of Contracts § 240 comment c.

The difficulty with Professor Corbin's view is that intent, as an issue of fact, must go to the jury. In effect this amounts to a virtual emasculation of the parol evidence rule. See Calamari and Perillo, *supra*, noting this (footnote 45 at p. 106) but approving it as part of the trend to admit more evidence. Professor Williston's view has the difficulty of being fictional in that if the writing covers the subject matter of the alleged oral terms we presume it is complete no matter what the evidence would show and it is a matter for the court, not the jury.

Although our caselaw is far from decisive, it would appear from our statute and some cases that Oklahoma inclines to the Williston view. The statute says that the writing "supersedes" the prior or contemporaneous oral terms "concerning its [i. e. the writing's] matter." 15 O.S.1971, § 137. Thus the issue is whether the alleged oral terms concern the subject matter of the writing. In *National Mineral Co. v. A. L. Sterne Co.*, 198 Okl. 37, 174 P.2d 922, 925 (1946), the Supreme Court said that " . . . whether the written contract is complete must be determined from the contract itself together with the circumstances under which, and the purpose for which it was executed." While this necessarily admits parol evidence on the circumstances and purpose, the court further cited with approval the limitation that "[i]t is not competent to lay the foundation for such oral evidence by oral testimony that only part of the agreement was reduced to writing, and then to prove by parol the part omitted." 174 P.2d at 925 citing *Samuel H. Chute Co. v. Latta*, 123 Minn. 69, 142 N.W. 1048.

Returning to our facts, the crux of the issue now becomes whether the admitted oral contract concerned the same matter as the written contract. Beyond serious question it did. The Subcontractor ingeniously argues that since the written contract deals with 27 wells and the oral contract with those wells in excess of 27, that they do not deal with the same matter and that the oral contract is clearly collateral. But this assumes that the meaning of the written contract limits the Subcontractor's obligation to plugging 27 wells. The subcontract makes the plans and specifications of the general contract part of the subcontract. The number 27 was an estimate of wells to be plugged. While the subcontract did not fix the number of wells to be plugged, it did for the price (to be sure an extreme variance from the estimate might raise problems of interpretation but that is not at issue here). We think the interpretation contended by the Subcontractor is inconsistent with the clear intent of the written transaction. Moreover, nothing in the written contract suggests that it is incomplete or deficient.

As we view the record the written contract superseded the oral one under § 137. Although the result may be harsh in that an oral agreement which is not in dispute is to be ignored because of a subsequent written agreement, such is the logical and intended effect of § 137. The case might have been

more suited for treatment as one for reformation of a written contract for mutual mistake. In such cases since the equity powers of the court are used to reform the writing, the parol evidence rule is no bar to proving the actual intended agreement. See *Marathon Ins. Co. v. Arnold*, Okl., 433 P.2d 927 (1967). But this relief does create problems for plaintiffs because of the higher burden of proof imposed in such cases. *Carraco Oil Co. v. Mid–Continent Cas. Co.*, Okl., 484 P.2d 519 (1971). In any event, this issue was not raised.

The lesson is clear. Parties who sign written agreements must take care that the writing reflects their mutual intent or be prepared to meet the exacting standards required to reform the writing.

The case is reversed and remanded to the District Court with directions to enter a judgment denying plaintiff's Rule 13 motion and granting defendant's Rule 13 motion.

REVERSED AND REMANDED WITH DIRECTIONS.

REYNOLDS, P. J., and BOX, J., concur.