CHARLES M. CHAMBERLAIN ET AL. V. FLORENCE M.
BUTLER.

FILED MAY 22, 1901.   No. 9,406.

Insurance: WAGER POLICY. One may lawfully insure his own life and
afterwards assign the policy to another having no insurable
interest, if done in good faith and not by way of cover for a
wager policy.

ERROR from the district court for Johnson county.
Tried below before STULL, J. *Reversed.*

*Edward C. Hall, M. E. Cowen, J. W. Deweese, Isham
Reavis* and *Davidson & Giffin*, for plaintiffs in error.

*Frank Irvine*, for the insurance company: The interest
of the client I represent is such that it can not well permit
an adjudication of the questions of law argued in the
briefs without an effort to protect its own position. This
interest is twofold. In the first place, having been com-
pelled to pay its policy to Crandall, the last assignee, by
virtue of a judgment in New York, if this court should
adopt the theory of the defendant in error and hold the

assignments void, then the company, after it supposed its liability was discharged, would be subject to the peril of a double liability from litigation in Nebraska. Secondly, the peril of double liability might arise at any time from a conflict of jurisdictions.

It has been settled ever since the decision in *Dalby v. India & London Life Assurance Co.*, 15 C. B., 365, that a policy of life insurance differs in its nature from one of fire or marine insurance. The latter are contracts of indemnity, and liability ceases with the cessation of insurable interest, whereas a contract of life insurance is an absolute agreement to pay a stated sum on the death of the insured, and, if valid in its inception and if the premiums are paid, the company, must, upon the death of the insured and compliance with the terms of the policy, pay this sum to the persons entitled thereto, although the insurable interest no longer exists. This doctrine has been recognized throughout the United States and was emphasized in *Connecticut Mutual Life Ins. Co. v. Schaefer*, 94 U. S., 457.

*William H. Kelligar* and *Edgar Ferneau, contra:*

A wager policy is defined to be: A pretended insurance founded on an ideal risk, where the insured has no interest in the thing insured, and can, therefore, sustain no loss by the happening of any of the misfortunes insured against. Beach, Insurance, 1142; Bouvier's Law Dictionary, vol. 2, 694; 3 Kent, 225. Wager policies are so universally condemned that it would be useless to cite authorities. The principle upon which the condemnation is founded is that the policy-holder has no interest in the insured, except in his early death.

The theory of Chamberlain's counsel is that since the policy is valid in its inception, it could be transferred like a chose in action. That policies of life insurance are assigned for proper motives and sound consideration, is not to be denied. Our claim is that Butler had a right to insure his life. The policy was valid; and he had a

right to assign it as collateral. Chamberlain had a right to agree to pay Butler's premium and to take an assignment as security. But the law will not allow him to go further and acquire an interest in the death of the assured. Such speculation in human life is against public policy. *Cammack v. Lewis*, 82 U. S., 643; *Warnock v. Davis*, 104 U. S., 775; *Franklin Life Ins. Co., v. Hazzard*, 41 Ind., 116; *Alabama Gold Life Ins. Co. v. Mobile Mutual Ins. Co.*, 81 Ala., 329; *Bayse v. Adams*, 81 Ky., 368; *Seigrist v. Schmoltz*, 113 Pa. St., 326; *Tate v. Commercial Building Ass'n*, 45 L. R. A. [Va.], 245; *Long v. Meriden Britannia Co.*, 94 Va., 594; *New York Life Ins. Co. v. Davis*, 96 Va., 737; *Corson's Appeal*, 113 Pa. St., 438.

The assignee of a policy of insurance having no insurable interest in the life of the insured, can collect only the amount of his debt or advances. *Missouri Valley Life Ins. Co. v. McCrum*, 36 Kan., 146; *Helmatag v. Miller*, 76 Ala., 183; *Price v. Knights of Honor*, 68 Tex., 361; *Equitable Life Ins. Co. v. Hazlewood*, 75 Tex., 338; *Exchange Bank v. Loh*, 44 L. R. A. [Ga.], 372; *Crotty v. Union Ins. Co.*, 144 U. S., 621; *Morris v. Georgia Loan, Savings & Banking Co.*, 46 L. R. A. [Ga.], 506; *Schonfield v. Turner*, 12 S. W. Rep. [Tex.], 626; *Cheeves v. Anders*, 87 Tex., 287; *Clement v. Insurance Co.*, 101 Tenn., 22; *Trinity College v. Travelers' Ins. Co.*, 22 L. R. A. [N. Car.], 291.

Where the disproportion between the amount of a policy taken out by a creditor on the life of a debtor, and the debt thereby secured, is very great, as where the insurance is $3,000 and the debt $100, it is the duty of the court to declare the transaction a wager. *Cooper v. Shaeffer*, 11 Atl. Rep. [Pa.], 548; *Cammack v. Lewis*, 15 Wall. [U. S.], 643; *Gilbert v. Moose*, 104 Pa. St., 74; *Corson's Appeal, supra; Grant v. Kline*, 9 Atl. Rep. [Pa.], 150.

One claiming an insurable interest in the life of another must plead and prove such interest. *Ruse v. Mutual Benefit Life Ins. Co.*, 23 N. Y., 516; *Fowler v. New York Indemnity Ins. Co.*, 26 N. Y., 422; *Burton v. Connecticut Mutual Life Ins. Co.*, 119 Ind., 207; *Continental Life Ins.*

*Co. v. Volger*, 89 Ind., 572; *Singleton v. St. Louis Mutual Ins. Co.*, 66 Mo., 63.

Where there has been an actual conversion, no demand is necessary. *Wright v. Greenwood Warehouse Co.*, 7 Nebr., 435; *Miller v. Wilson*, 98 Ga., 567; *Union Stock Yards Co. v. Mallory*, 157 Ill., 554; *Baltimore & O. R. Co. v. O'Donnell*, 49 Ohio St., 489; *Ensley Lumber Co. v. Lewis*, 25 So. Rep. [Ala.], 729; *Mohr v. Langan*, 77 Mo. App., 481; *Rushin v. Tharpe*, 88 Ga., 782.

The defendant below made the defense that the policy was actually his property by virtue of an absolute sale. This defense rendered a tender unnecessary. *First Nat. Bank v. Kickbush*, 47 N. W. Rep. [Wis.], 267; *Davis v. Winona Wagon Co.*, 52 Pac. Rep. [Cal.], 487.

*A. M. Appelget*, also for defendant in error:

If the allegation of the answer was true, to-wit, that the assignment was absolute in the sum of $75, the contract was a reality, a gambling transaction, a mere wager policy. *Warnock v. Davis*, 104 U. S., 775.

The question in trover is: Does the defendant exercise a dominion over the property in exclusion or in defiance of the plaintiff's rights? *Liptrot v. Holmes*, 1 Kelly [Ga.], 381, 391; *Thompson v. Currier*, 24 N. H., 237.

NORVAL, C. J.

Florence M. Butler, as administratrix of the estate of Robert L. Butler, brought action in the district court of Johnson county against Charles M. Chamberlain and the Chamberlain Banking House, alleging in her petition, substantially, that said Robert L. Butler in his lifetime procured to be issued to him a policy of insurance on his life by the Home Life Insurance Company of New York, in the sum of $5,000, payable to his executors, administrators or assigns; that after the issuance of this policy said Robert assigned it to Chamberlain as security for the payment of a loan of $75 made by defendants to said

Butler; that afterward Butler died, the insurance policy being at that time in full force, and that plaintiff, as the duly appointed administratrix of his estate, made due proof of the death of Butler, but the company refused to pay the amount of the policy to her, and had in fact paid it to one Crandall, to whom the policy had been assigned by Chamberlain, and that the latter had converted the policy and insurance to his own use; and she prayed for judgment against the defendants in the sum of $4,925, with interest and costs. Chamberlain answered, alleging that the policy was by Butler sold and assigned to him absolutely, for the sum of $75 paid Butler by defendant, and that by such sale and assignment Chamberlain became the owner thereof, and paid all premiums and dues thereon from the time of assignment to the death of Butler; that after such death defendant assigned the policy to one Crandall, of New York, who prosecuted a suit in said state against said company on said policy, secured judgment for the amount thereof, which was by the company paid to Crandall in full; that when suit was commenced the insurance company gave due notice thereof to plaintiff, who failed to appear therein. To this answer a reply in the nature of a general denial was filed. On trial in the district court the following statement of facts (not copying unnecessary documents) was agreed upon:

"It is agreed that on the 8th day of December, 1891, the policy in controversy then being in force and subsisting was sold and assigned to defendant Charles M. Chamberlain for the agreed price of $75.00; that an assignment thereof was then made and executed by said Robert L. Butler in due form, which was immediately forwarded to the insurance company to be examined, and if approved, recorded by the company in the office of its secretary; that afterwards said assignment was so approved and recorded. The assignment in the first place, being executed in duplicate, both copies of the assignment being sent to the insurance company; and after the same was approved and recorded one copy was returned to the de-

fendant Chamberlain with an indorsement upon it that
it had been recorded by the company, and immediately
upon the receipt of the assignment thus approved and
recorded the said seventy-five dollars was paid to said
Butler by Charles M. Chamberlain; that said Chamberlain
continued to hold and own said policy which was turned
over to him with the assignment until the 12th day of
November, 1895, when the same was sold and assigned
and delivered to one Elbert Crandall, of the city of New
York, by said Chamberlain by written assignment duly
and properly executed at that time; which assignment
is in words and figures as follows: [Here copy of assign-
ment follows.]

"That on the 12th day of November, 1895, said policy
with said assignment to Crandall was forwarded to said
Elbert Crandall at New York city, who thereafter
brought suit in his own name in the supreme court of
the county of New York in the state of New York and
recovered a judgment against the insurance company for
the amount of the policy, interest thereon and costs; that
after the commencement of said suit and before the trial
thereof and before answer by the plaintiff in this case
was notified by the said insurance company of the pen-
dency of said suit and she was requested to intervene
and assert whatever interest she had in and to said policy.
This she declined to do, alleging as her reason that she
was financially unable to go to the state of New York and
maintain her case.  This plaintiff was not made a party
defendant in the suit brought in the supreme court of
New York and no service of summons was made upon
her in that suit.  After said judgment was rendered
against said insurance company the same was collected
by said Crandall, no part of the amount of which has ever
been paid to or received by these defendants, or either of
them.  After the original assignment of said insurance
policy to said Charles M. Chamberlain and while he re-
mained the holder thereof under said assignment, he paid
the annual premiums thereon as follows, to-wit: $135.95

about the 12th day of December, 1891, $135.95 on November 26, 1892, $135.95 on November 26, 1893, $135.95 on November 26, 1894.

"It is further agreed that after the death of said Robert L. Butler, which occurred on the 29th day of October, 1895, the plaintiff in this case notified the insurance company not to pay the amount of said policy to defendant Chamberlain, as administratrix of the estate of her husband. Both said Elbert Crandall and this plaintiff, as administratrix of the estate of her husband, made proof of the death of said Robert L. Butler and forwarded the same to the insurance company at its office in New York city and each demanded the payment of the amount of the policy from the company. After the death of said Robert L. Butler, the insurance company notified the plaintiff that as the assignment to Chamberlain of the policy was recorded in their office that she was not the proper party to make the proof of death. That the said insurance company did not deny its liability to pay the amount mentioned in the policy.

"It is also mutually agreed that Mr. Charles M. Chamberlain and Mr. Elbert Crandall are cousins."

On trial the court found in favor of the Chamberlain Banking House, and rendered judgment against the defendant, Charles M. Chamberlain, and in favor of the plaintiff, for the value of the policy, less premiums paid, and the money paid by him to Butler. Chamberlain brings the judgment here for review.

Several interesting questions are presented in the briefs of counsel, but we think it unnecessary to decide more than one, owing to the position we shall take on it. While the petition alleges that the policy was merely pledged, it is agreed by the stipulation quoted that it was in fact sold and assigned absolutely by Butler to Chamberlain. If such assignment was valid, then the latter was the owner of it, and had the right to dispose of it as he saw fit. We think the law is that under the facts it was lawful for Butler to dispose of the policy. We are

aware that there is a sharp conflict of authorities in the several American courts relative to the validity of a sale of a life insurance policy by one having an insurable interest to one not having such interest. In all the states, perhaps, it is held against public policy for one not having an insurable interest to procure insurance upon the life of another, even though it be with the consent of such person. In some of the states it is held against. public policy for one who has taken out insurance upon his own life to transfer it to one having no insurable interest. In some of the states such a transaction is prohibited by express legislative enactment. But the question to be decided here is, assuming that Chamberlain had no such interest in the life of Butler, could he legally buy the policy in question, such policy in its inception having been valid and taken out in good faith by Butler, with no intention or design on his part of assigning it subsequently to Chamberlain? Those courts which hold such a transaction void proceed on the ground of public policy. Originally, at common law, choses in action that were assignable were exceedingly few; but the tendency is now reversed, and those not assignable are the exception rather than the rule. The modern policy being then as above stated, the reason for a rule contrary to such tendency should be exceedingly strong before a court, where the question is yet unsettled, should adopt a contrary rule in any given case. While public policy is a salutary thing, it has its limitations and dangers. Among them is the fact that it is an exceedingly indefinite term, has no lines of distinct demarcation, and may readily lend its aid to a court anxious to make a good case, rather than a safe precedent. For that reason, before a case is decided upon that ground solely, courts should be very sure that the reasons for so doing are clear, strong, and admit of no doubt concerning their reasonableness or applicability. Now, the principal reason for branding assignments of this nature as inimical to sound public policy is that the interest of a stranger in the death of the insured is

51

so strong as to tempt to murder of the latter, the earlier to participate in the avails of the policy. Such interest doubtless tends to such a desire. But the same desire would exist on the part of a creditor who has an insurable interest, or of one who advanced money on the policy, where his only hope of reimbursing himself for the loan might be the policy. It is exceedingly doubtful if strangers are any more apt to either desire or seek to accomplish the death of others than are those nearly related to them. The strength of this desire, where it exists, depends not so much upon the consanguinity of the parties as upon the moral stamina of him who holds the expectancy, be that expectancy an insurance policy, a devise, a remainder or other acquisition which may not be had until the death of another. Another reason sometimes assigned for holding such assignments illegal is that an assignee having no insurable interest is in the position of one who in the first instance takes out a wager policy. But we think not. If an insurable interest exists in the beneficiary at the time the policy is issued, and it is taken out in good faith, the object and purpose of the rule against wager policies would seem to have been sufficiently attained (16 Am. & Eng. Ency. Law [2d ed.], 846); and there is no reason to apply the rule to policies taken out in good faith and afterwards assigned in good faith than there would be were the assured to retain it in his own hands.

Counsel rely upon *Warnock v. Davis*, 104 U. S., 775, as an authority to uphold the judgment of the lower court. That case and this present two very different questions. In that case the insured took out the policy in pursuance of an agreement that a third party, having no insurable interest in his life, should, in consideration of certain payments to be made by it, receive at his death nine-tenths of the insurance money. In the opinion Justice Field says: "The assignment of a policy to a party not having an insurable interest is as objectionable as the taking out of a policy in his name." Under the facts in-

volved in that case, the language was appropriate, for there was collusion between the insured and the party to be benefited by his death by a receipt of the amount hereinbefore mentioned. But the language is not applicable to this case, for there was no agreement between Butler and Chamberlain, at the time the policy was procured, that the latter should participate in its avails. The transaction with him was wholly independent of and subsequent to the original one between Butler and the insurance company. If their agreement had existed prior to the issuance of the policy, or contemporaneous therewith, then the words quoted would be applicable, otherwise not. That this is the meaning of the words, is clear when we read *Connecticut Mutual Life Ins. Co. v. Schaefer*, 94 U. S., 457, and *Ætna Life Ins. Co. v. France*, 94 U. S., 561, 567. In the *France Case* that court lays down the rule applicable to the facts in this case, viz., that any person has a right to procure insurance on his own life, and to assign it to another, provided it be not done by way of cover for a wager policy. The intention and good faith of the parties are the governing principles. In the *Schaefer Case* the court held that a life insurance policy, originally valid, does not cease to be so upon the intermission of the assured party's interest in the life insured. It was certainly not intended in the *Warnock Case* to overrule or modify either of them. They are not in conflict with that case, when the facts are remembered. The language of the court in the *Warnock Case* is, unfortunately, somewhat misleading in several instances, although the ultimate conclusion reached is right. The comments therein on the New York cases (*St. John v. American Mutual Life Ins. Co.*, 13 N. Y., 31, and *Valton v. National Fund Life Assurance Co.*, 20 N. Y., 32) are uncalled for and not involved in the issues, for the questions of law decided in those cases are very different from, and not necessarily conflicting with the law involved in the *Warnock Case*. We are aware that several eminent American courts disagree with the New York cases cited, and with other courts

of this country which agree with the latter. It seems that to hold contrary to that rule would have the effect mentioned in *St. John v. American Ins. Co., supra,* "without the right to assign, insurance on lives lose half their usefulness," a fact that should not be lost sight of in this day when almost every person carries life insurance of some character, the commercial value and usefulness of which should be fostered rather than crippled or minified. If such choses in action may be legally sold absolutely, it is plain that more can be realized from them, in the day of need, than if valuable only as security for loans. And until it shall be made to appear that in those jurisdictions where such policies are assignable absolutely, crimes committed by such assignees are more frequent than in those where assignments of the nature of the one here involved are illegal, we are of opinion that the reasons for holding such transactions void are insufficient.

Chamberlain then, being, under the facts agreed on, the absolute owner of the policy, had the right to transfer it to Crandall, and such act was not a conversion of the policy or insurance; for he was entitled to the whole of the proceeds thereof, free from all claims of the plaintiff, or the estate of deceased. The judgment is, therefore,

REVERSED.

NOTE.—One who agrees to insure his life for the benefit of an association of which he is a member is not *in pari delicto.* Hence the court will not interfere to compel the association to account in case it receive the benefit of the insurance. *Tate v. Commercial Building Ass'n,* 97 Va., 74, 45 L. R. A., 243.

A college supported by a church has no insurable interest in the life of a member of that church which will sustain a policy of insurance on his life in favor of the college, although the college paid the premiums, while the application was made by the person whose life was insured. *Trinity College v. Travelers' Ins. Co.,* 113 N. Car., 244, 22 L. R. A., 291.

As a rule, a grandfather is under no legal obligation to support or provide for his granddaughter, and in an action by the latter upon a policy of insurance issued directly to her upon the life of her

grandfather, the court can not infer, as a matter of law, from an averment of the relationship between the parties, such an insurable interest in the life of the grandfather as will uphold the policy. *Burton v. Connecticut Mutual Life Ins. Co.*, 119 Ind., 207.—REPORTER.