BARRY v. HUBBARD, Adm'x.

No. 31480. Oct. 24, 1944.

Rehearing Denied Dec. 5, 1944.

Application for Leave to File Second Petition for Rehearing Denied Feb. 6, 1945.

*155 P. 2d 512.*

Frank Hickman and Summers Hardy, both of Tulsa, for plaintiff in error.

Henry M. Vance, of Tahlequah, and R. M. Mountcastle, of Muskogee, for defendant in error.

PER CURIAM. On the 17th day of March, 1941, Pearl Adair Hubbard, administratrix of the estate of R. W. Hubbard, deceased, commenced an action against Lillian Barry to recover certain funds paid to Lillian Barry by the Northwestern Mutual Life Insurance Company. Judgment was for the plaintiff, and defendant appeals. The parties will be referred to by their trial court designation.

The facts disclose that R. W. Hubbard was the husband of the plaintiff; that R. W. Hubbard died August 28, 1938. At the time of his death there were in force two life insurance policies, one for $2,000 and one for $3,000 issued to R. W. Hubbard with the plaintiff as beneficiary. Prior to the assignment hereinafter mentioned, R. W. Hubbard first made an assignment condition upon an indebtedness expressed in the assignment existing between himself and the defendant. Between the time of the first assignment and the assignment involved in this action, R. W. Hubbard changed the beneficiary from the plaintiff and therein named his estate and assigns as beneficiary. On the 31st day of May, 1937, R. W. Hubbard executed the following assignment:

"Absolute Assignment of Policies.

"For a valuable consideration, the

receipt of which is hereby acknowledged, I hereby sell, assign and transfer absolutely unto Lillian L. Barry, of Tulsa, in the State of Oklahoma, her executors, administrators, or assigns, all my right, title and interest in and to policies Nos. 1537773-1537774, issued by The Northwestern Mutual Life Insurance Company on my life, together with all privileges, benefits, and advantages to be derived therefrom.

"I hereby fully authorize and empower the said assignee, her executors, administrators, or assigns, to surrender said policies at any time at or before their maturity and to receive and recept for the surrended value of said policies and all dividends or surplus arising thereunder; and to assign said policies to the said Insurance Company without my consent as security for a loan or loans in such sum or sums as the said Insurance Company may be willing to loan thereon; and to execute such loan agreements, or other instruments, as the said Insurance Company may require to evidence and secure the same.

"I do hereby irrevocably constitute and appoint Lillian L. Barry, my attorney with full power of substitution and revocation in my name or otherwise, but at her own proper cost, to take all proceedings and execute any and all instruments to fully carry the assignment into effect, and to perform every act and thing in and about the premises, hereby ratifying and confirming all that said attorney or her substitute may do; and I specifically authorize the said Life Insurance Company to pay the sums due or to become due under said policies by loan, surrender, or otherwise to said assignee, without the payment to me of any further consideration.

"It is expressly understood and agreed that this transfer is made for the purpose of divesting the assignor of all title to and interest in said policies and the proceeds thereof and of vesting the absolute and unconditional title thereto in said assignee.

"I hereby further declare that no proceedings in bankruptcy have ever been instituted by or against me.

"Witness my hand and seal at Eldon in the State of Oklahoma this 31st day of May, 1937."

It is the contention of the plaintiff that her husband assigned the policies as security for the sum of approximately $400, while it is the contention of the defendant that at the time of the assignment R. W. Hubbard was indebted to the defendant in the approximate sum of $8,000, and that the assignment was a complete assignment of all rights thereunder and absolute in the defendant.

For the purpose of her theory the defendant testified fully as to all items of indebtedness created between herself and R. W. Hubbard. She introduced checks and identified them and detailed other items of advances made to R. W. Hubbard since 1925.

It is first argued that the defendant was a competent witness to testify to the transaction had with R. W. Hubbard. 12 O. S. 1941 § 384 provides as follows:

"No party to a civil action shall be allowed to testify in his own behalf, in respect to any transaction or communication had personally by such party with a deceased person, when the adverse party is the executor, administrator, heir at law, next of kin, surviving partner or assignee of such deceased person, where such party has acquired title to the cause of action immediately from such deceased person; nor shall the assignor of a thing in action be allowed to testify in behalf of such party concerning any transaction or communication had personally by such assignor with a deceased person in any such case; nor shall such party or assignor be competent to testify to any transaction had personally by such party or assignor with a deceased partner or joint contractor in the absence of his surviving partner or joint contractor, when such surviving partner or joint contractor is an adverse party. If the testimony of a party to the action or proceeding has been taken, and he afterwards die, and the testimony so taken shall be used after his death, in behalf of executors, administrators, heirs at law, next of kin, assignee, surviving partner or joint contractor, the other party, or the assignor, shall be competent to testify as to any and all matters to which the testimony so taken relates."

Some states have an exception in a somewhat similar statute allowing the adverse party to testify where the agent or heirs rely upon the transaction. Clayton v. Clayton, 125 N. J. L. 537, 17 Atl. 2d 496; In re Custer's Estate, 229 Iowa, 1061, 295 N.W. 848. However, the same result has been reached without an exception in the statute. In Lieuallen, Ex'r, v. Young, 115 Okla. 153, 241 P. 342, J. M. Young brought an action against John S. Sankey. Sankey died and Lieuallen was appointed administrator. The action was on written agreement. Lieuallen testified that Sankey had an oral agreement relating to a well to be drilled and Young was permitted to deny this agreement. Therein the court held that the purpose of said section is to prevent a person from testifying to transactions and communications had with a deceased person to the prejudice of his legal representatives or heirs when the voice of the decedent is silent to affirm or deny, but the rule can have no application where the legal representative or heirs claim to be a party to the very transaction or communication involved and take the lead in testifying what said transaction or communication was or was not. Defendant contends that this case is directly in point. We agree. Because we are of the opinion that it is pertinent to the entire discussion herein, we quote the findings in the judgment of the court.

"It is the opinion and holding of the trial court that the defendant, Lillian Barry, is incompetent to testify with respect to her transactions with the deceased, Robert Hubbard, and all her testimony along this line is, by the court stricken, and given no consideration whatever in rendering this judgment. However, the court does not mean to hold that the testimony of said witness by way of denial of the testimony of witnesses offered by plaintiff is incompetent, but on the contrary holds that she is competent to testify to the extent of making denial of the testimony offered by plaintiff, also to offer in evidence her exhibits and checks, and in general to testify about anything except the specific details of her transactions with the deceased—and no part of her testimony with respect to these matters is by the court stricken from the record or excluded by the court from the record nor by consideration by the court.

"A great number of checks have been offered in evidence by the defendant, payable to the Murray Mercantile Company or to the deceased, Robert Hubbard, but it appears from all the evidence that the deceased took care of certain business for the defendant, paid for labor in caring for her orchard and in erecting buildings thereon, furnishing supplies to persons who were in her employ, and it is impossible to know, under all of the conditions which existed between her and her brother, what these checks were for or whether the deceased owed the defendant anything on account thereof. Excluding the testimony of the defendant in this connection there is testimony by the other members of the family that the accounts of deceased and defendant were square except as to the matter of the insurance policies which were the subject of this action. This may or may not be true, but in view of the involved dealings between the deceased and defendant it is impossible for the court to know whether anything was owed by deceased to the defendant by reason of these checks and, if so, in what amount. These checks are therefore entirely excluded so far as this judgment is concerned from any further consideration by the court."

It will be seen therefore that the court did consider all the testimony of the defendant, Lillian Barry, respecting each item claimed as advanced, but found that there was no evidence outside of the evidence of the defendant, Lillian Barry, which sustained the contention of the defendant that the advancements were made in consideration of a pledge of the insurance policies or that tended to sustain the contention of the defendant that the assignment was made in consideration of advances. The plaintiff first offered proof of assignment and testified it was made to secure the sum of approximately $400. The trial court erred in suggesting that the defendant was not a competent witness to testify to the transaction. It also erred in any suggestion that items which were advanced in consideration of the

transfer or assignment of the policies were barred by the statute of limitations. It is a well settled rule of law that a counterclaim to a cause of action is not barred until the cause of action is barred. 12 O. S. 1941 § 273; Scrivner v. McClelland, 75 Okla. 239, 182 P. 503; Mires v. Hogan, 79 Okla. 233, 192 P. 811; Cooper v. Gibson, 69 Okla. 105, 170 P. 220.

It therefore becomes necessary under the next assignment of plaintiff in error to weigh the evidence. The effect of the holding of the trial court is that there was no proof that the items other than the $400 were advanced in consideration of the assignment of the policies. Two witnesses testified for the plaintiff and affirmatively stated that the consideration for the assignment of the policies was $400, which represented an advancement of $350 in cash and certain payments made by the defendant as premiums on the insurance policies. We have carefully examined the evidence of the defendant in which she detailed all advances of funds to R. W. Hubbard commencing in the year 1925, and we find no statement in her evidence that indicates that these advancements were made in consideration of the assignment of the policies except the $350 advanced at the date of assignment. Regardless of the error of the trial court in suggesting that the defendant was an incompetent witness or suggesting that the amounts advanced to R. W. Hubbard were barred by the statutes of limitations, the finding of the trial court that the only consideration for the transfer or assignment of the insurance policies was the $350 advanced in cash and the sums paid as premiums is not clearly against the weight of the evidence. We have held that in an action of equitable cognizance the presumption is in favor of the finding of the trial court, and it will not be set aside unless the same is against the clear weight of the evidence; and where the finding of the trial court is general, such finding is a finding of each special thing necessary to sustain the general judgment. Broadwell v. Flynn, 189 Okla. 620, 118 P. 2d 1029;

Williams v. Downing, 185 Okla. 633, 95 P. 2d 612.

Finally it is urged that the assignment was complete and unconditional and not made as a pledge. With this contention we cannot agree. Although the assignment appeared to be absolute, whether it was made in consideration for the repayment of funds advanced was a question of fact. First National Bank v. Jackson, 140 Okla. 282, 283 P. 242; 32 C.J. Ins. p. 1240; Chamberlain v. Butler, 61 Neb. 730, 86 N.W. 481, 87 A.S.R. 484, note and following; Gilmon v. Curtis, 66 Cal. 116, 4 P. 1094. The assignment of a policy of life insurance to a creditor by way of security for a debt vests the legal title to the policy, but the interest of the assignor is what remains after the debt is satisfied. Gilmon v. Curtis, supra. See, also, Woofter v. Fourth Nat. Bank, 182 Okla. 483, 78 P. 2d 683. The fact that the first assignment was made in consideration of a definite pledge, and that thereafter on request of the insurance company there was another assignment executed and delivered, together with the fact that during the first assignment and the assignment involved in this action R. W. Hubbard changed the beneficiary to his estate and assigns, was definitely proven. The trial court found from this evidence that the assignment was made in consideration of certain funds advanced. The theory of defendant in the trial below was that the assignment was made in consideration of certain sums advanced. Her claim was that the consideration was in the neighborhood of $8,000. The claim of plaintiff was that it was in the neighborhood of $400. The finding of the trial court was in favor of plaintiff, and we are unable to state that the finding is clearly against the weight of the evidence.

The judgment of the trial court is affirmed.

GIBSON, C. J., and OSBORN, BAYLESS, WELCH, HURST, CORN, and DAVISON, JJ., concur. HURST, J., dissents.