1998 OK 52

THE PRUDENTIAL INSURANCE COMPANY OF AMERICA, a corporation, Plaintiff,

v.

William A. GLASS, Appellee/Defendant,

and

Damon Patrick Glass, Chris Cowan Glass, Glenn E. Glass and Darla Glass Brown, Appellants/Defendants,

and

Bill Eisenhour Funeral Homes, Inc. and Forest Staggs d/b/a Arlington Memory Gardens, Defendants.

No. 89022.

Supreme Court of Oklahoma.

June 9, 1998.

for summary judgment were filed and summary judgment was granted to appellee. The Court of Civil Appeals (COCA) reversed and remanded. We previously granted certiorari and now, like the COCA, reverse and remand for further proceedings.

## PART I. STANDARD OF REVIEW.

¶2 An appellate court reviews a grant of summary judgment by a *de novo* standard. In *Carmichael v. Beller*, 1996 OK 48, 914 P.2d 1051 we said:

> Although a trial court in making a decision on whether summary judgment is appropriate considers factual matters, the ultimate decision turns on purely legal determinations, i.e. whether one party is entitled to judgment as a matter of law because there are no material disputed factual questions. Therefore, as the decision involves purely legal determinations, the appellate standard of review of a trial court's grant of summary judgment is *de novo*. [This Court], like the trial court, will examine the pleadings and evidentiary materials submitted by the parties to determine if there is a genuine issue of material fact. Further, all inferences and conclusions to be drawn from the evidentiary materials must be viewed in the light most favorable to the non-moving party.' (citations omitted)

*Id.* at 1053; *See also Hoyt v. Paul R. Miller, M.D., Inc.*, 1996 OK 80, 921 P.2d 350, 351–352; *Kirkpatrick v. Chrysler Corp.*, 1996 OK 136, 920 P.2d 122, 124.

¶3 Further, a summary judgment ruling must be made on the record actually presented by the litigants, not on a record potentially possible. *Webb v. Dayton Tire and Rubber Co. a Div. of Firestone Tire Co.*, 1985 OK 7, 697 P.2d 519, 523. If the summary judgment submissions disclose either controverted material facts, or, reasonable minds might reach different conclusions even if the material facts are undisputed, summary judgment should be denied. *Perry v. Green*, 1970 OK 70, 468 P.2d 483, 488–489. It must be remembered, neither this Court or a trial court weighs the evidence on a motion for summary judgment and it is not the purpose of such procedure to substitute a trial by affida-

Kent F. Frates and Ryan S. Wilson of Hartzog Conger & Cason, Oklahoma City, for Appellee.

Timothy B. Hummel of Hornbeek, Krahl & Vitali, Oklahoma City, for Appellants.

LAVENDER, Justice.

¶1 After insured, Harley Evans Glass died, Prudential Insurance Company of America (Prudential) filed an interpleader suit for judicial resolution of the conflicting claims of appellee, William A. Glass (insured's brother) and appellants, Damon Patrick Glass, Chris Cowan Glass, Glenn E. Glass and Darla Glass Brown (insured's children) to proceeds due under a life insurance policy insuring Harley's life. Cross-motions

vit for a trial according to law. *Stuckey v. Young Exploration Co.*, 1978 OK 128, 586 P.2d 726, 730. Weighing of evidence is a function for the jury [*Id.*] and, in a non-jury case, for the trial judge after an appropriate trial of the issues. Finally, only if the movant for summary adjudication satisfies the initial burden to show entitlement to summary judgment is it incumbent on the nonmovant to demonstrate by his/her own submissions the existence of a substantial dispute as to some material fact. *McMullen v. City of Del City*, 1996 OK CIV APP 46, 920 P.2d 528; *Spirgis v. Circle K Stores, Inc.*, 1987 OK CIV APP 45, 743 P.2d 682 (Approved for publication by Oklahoma Supreme Court). We now turn to our review of the matter.

## PART II. FACTUAL RECORD AND POSITIONS OF PARTIES.

¶ 4 The interpleader suit alleged Prudential issued a life insurance policy to Harley and in view of his death on December 8, 1995, $22,848.22 was due on the policy. Appellee and appellants were named defendants.[1] Prudential disclaimed any interest in the proceeds, acknowledged its liability to pay the proper party(s), and, as stakeholder, tendered the proceeds to the registry of the trial court. Appellee and appellants answered setting forth their respective claims.

¶ 5 Thereafter, appellee and appellants cross-moved for summary judgment. Both submitted copies of a July 1984 writing, bearing the title, ASSIGNMENT, to support their positions. The document, signed by Harley and addressed to Prudential, reads in relevant part:

Comes now HARLEY EVANS GLASS and for good and valuable consideration assigns the cash surrender value accrued and what will vest in the future to WILLIAM A. GLASS [appellee] until further

notice. This is your [Prudential's] further authority to substitute as the sole beneficiary on POLICY 33 489 229 to WILLIAM A. GLASS.

The record is undisputed Prudential received the Assignment, as the copy appellants submitted shows filing with Prudential on August 3, 1984, but said copy contains a stamped or typewritten statement insurer assumes no responsibility for the validity or sufficiency of the writing and it did not pass on the document's legality.

¶ 6 In their main positions both sides to this dispute view the Assignment as unambiguous. Not unexpectedly, of course, each side, however, would give it a different meaning. The essence of appellee's main position on summary judgment can be summarized as follows: the July 1984 Assignment in unambiguous language either assigned ownership of the policy to him or pledged its proceeds as collateral for good and valuable consideration.[2] Appellee further claims because the Assignment did not set out the exact nature of the consideration, he was entitled to and did show by parol, in the form of an unchallenged affidavit and documentary materials, the amount of the consideration for which the Assignment was executed. Appellee asserts these submissions show the consideration for the Assignment was various loans he made to Harley—the first in August 1977 and the last in June 1988—and that $34,251.57 remained unpaid at Harley's death. In essence, at least part of appellee's position is that the Assignment was only a part of a larger overall contract between him and Harley, part of which was written and part of which was oral, concerning the loan of money and its repayment.

¶ 7 Appellants' stance in relation to summary judgment is as follows: by a March 1987 written designation "Children of the Insured" were named policy beneficiaries,

---

1. Bill Eisenhour Funeral Homes, Inc. and Forest Staggs, d/b/a Arlington Memory Gardens were also named defendants as claiming some interest in the life insurance proceeds. In their cross-motions for summary judgment both appellee and appellants asserted the latter disclaimed any entitlement to the proceeds and the former failed to respond to the interpleader petition and asserted no claim against the proceeds.

2. An alternate theory raised by appellee in response to appellants' cross-motion was that, at a minimum, the July 1984 writing assigned the policy's cash surrender value to him and, at least, that amount (claimed to be $13,401.70) is due to him out of the policy proceeds.

the proceeds tendered by Prudential represent only death claim benefits and as beneficiaries they are entitled to all such benefits. Their position on the Assignment is that it assigned only the policy's cash surrender value—a benefit argued to be no longer available under the policy's terms because it must have been claimed prior to Harley's death by turning in the policy to Prudential, which was not done. Appellants' view on the effect of the July 1984 writing's second sentence, i.e. authorizing Prudential to substitute appellee as the sole beneficiary, is that such designation cannot be considered irrevocable because the policy gave Harley the right to change a previous beneficiary designation, which appellants assert he did in March 1987.

¶ 8 In addition to the July 1984 Assignment, the parties submitted other documents, including copies of the insurance policy, which each argues supports their positions. Appellee points to policy language providing a beneficiary's interest is subject to the rights of an assignee of record; appellants to language indicating cash surrender value is a benefit payable when the policy is surrendered prior to insured's death. Both sides also submitted the Prudential form signed by Harley in March 1987 where "Children of the Insured" (i.e.appellants) were designated beneficiaries.[3]

¶ 9 Appellee also submitted two of his own affidavits—the first attached to his summary judgment motion; the second to his response to appellants' cross-motion. In relevant part, the affidavits state the following: he loaned money to Harley in several installments and that pursuant to an apparent oral agreement, Harley could repay the loans at any time prior to his death, but the loans became due and payable at Harley's death.

Harley executed the Assignment as security and collateral for these loans and the indebtedness still due at Harley's death was $34,-251.57. Appellee also swears he and Harley drafted the Assignment without hiring an attorney, and it was their mutual intent and understanding the writing would assign the then current value of the policy (i.e. the then current cash surrender value) and any value the policy would have in the future, including upon Harley's death. Finally, one affidavit states the agreement recognized that if Harley repaid the loans prior to his death, Prudential could be notified, the Assignment would terminate and ownership of the policy would revert to Harley.

¶ 10 To substantiate the amount claimed owed, the first affidavit had its own attachments—1) a summary of the loans and payments made by Harley from August 1977 through November 1995, and 2) a six page ledger apparently kept by appellee of the amounts claimed loaned, the payments made and a running total of the amount due at any given month and year. Both handwritten documents reflect interest on the loans of 10% per year and contain the $34,000.00 plus figure as the amount due on November 30, 1995, i.e. about a week before Harley's death. As discussed in detail in PART III, *infra*, a factual question exists as to whether the $34,000.00 plus figure actually represents the amount remaining unpaid and this fact question provides a partial reason why summary judgment in favor of appellee was improper.

¶ 11 Other materials submitted by the parties on summary judgment include two letters from Prudential to appellee after Harley's death,[4] some type of Prudential

---

3. The copy submitted by appellants contains a second page—apparently the reverse side of the form.

4. The first letter, dated January 26, 1996, indicates Prudential's records show the policy was used as collateral in a 1984 agreement between appellee and Harley, and that it was Prudential's then belief it was "obliged to pay [appellee] as assignee". The letter also requests appellee inform it of the amount claimed and that any balance would be paid to Harley's children, as policy beneficiaries. The second letter, dated April 2, 1996, indicates Prudential is unable to determine the exact understanding between ap-

pellee and Harley concerning the Assignment and, although not taking a definitive position on its meaning, is couched in terms seeming to lean toward the view appellee was only assigned the then current cash surrender value and what would accrue in the future (the letter states cash surrender value at Harley's death to be $11,678.62) and, although the Assignment did indicate appellee was to be the sole beneficiary, such designation was not considered irrevocable. The letter urges the parties to attempt settlement of the dispute and informs that if agreement is not reached, Prudential would seek judicial resolution. As can be seen, the Prudential letters, at least in part, appear to express its belief(s) or

work-sheet form—apparently prepared by one or more of its employees—showing a net cash surrender value as of the date of Harley's death (12–8–95) of $11,678.62,[5] and a letter from each appellant to Prudential where, in general terms, the amount owed to appellee by Harley was questioned.[6] In addition, appellants submitted a March 1987 Prudential form generated shortly after Harley designated appellants policy beneficiaries which shows "Children of the Insured" as the policy beneficiaries and a purported acknowledgment sheet prepared when Prudential received the Assignment in 1984.[7] A final document submitted by appellants is a Prudential form, in part appearing to show the components of the $22,848.22 tendered by Prudential under the heading, Statement of Benefits–Death Claim Proceeds.[8] Such was the state of the record when the trial court granted summary judgment to appellee and denied such relief to appellants.

¶ 12 In a 2–1 decision the COCA reversed and remanded, ruling material fact questions exist. Although only appellee filed a petition for certiorari, appellants, in their certiorari response, also sought this Court's review, re-urging their summary judgment cross-motion stance. As noted above, we previously granted certiorari to review the matter and we now reverse and remand for further proceedings because neither appellee or appellants were entitled to summary judgment on this record.

**PART III. APPELLEE IS NOT ENTITLED TO SUMMARY JUDGMENT EVEN UNDER HIS OWN THEORY OF THE CASE BECAUSE MATERIAL FACT QUESTIONS EXIST AS TO THE EXACT SUM OWED TO HIM BY HARLEY AT THE TIME OF THE LATTER'S DEATH AND WHETHER THE AMOUNT OWED EQUALS OR EXCEEDS THE SUM DUE UNDER THE LIFE INSURANCE POLICY.**

¶ 13 It has long been understood a life insurance policy can be passed by assignment. 2A APPLEMAN, INSURANCE LAW AND PRACTICE § 1255 at 457 (1941). This Court has expressly held the owner of a life insurance policy, assignable at his will, may assign all his/her interest in the policy for monetary consideration. *Alkire v. King*, 183 Okla. 187, 80 P.2d 309 *Fourth Syllabus* (1938). No particular form of words is essential to effect an assignment of a life insurance policy—any writing indicating an intention to pass the interest in the policy's proceeds to the assignee is sufficient. *Id.*, 80 P.2d at 309 *Second Syllabus*. Where there is an unconditional assignment, the insured is ordinarily deemed to be divested of all right and title to the policy and the beneficial interest is vested in the assignee. *Devin v. Connecticut Mut. Life Ins. Co.*, 59 Okla. 192, 158 P. 435, 435–436 *Second Syllabus*

legal opinion(s) at various times on the issue(s) currently before us. Prudential's view(s) cannot be deemed to control our decision-making process and they simply are not decisive as to who is actually entitled to the proceeds. Neither the letters or Prudential's varying views can be considered conclusive as to the meaning of the July 20, 1984 writing or, for that matter, the legal import of the March 1987 beneficiary designation.

5. The $11,678.62 figure differs from the amount appellee claims to be the cash surrender value at the date of Harley's death, i.e. $13,401.70 (see note 2, *supra*). The discrepancy appears explainable by the work-sheet form and another document submitted by appellants which show Prudential itself had loaned Harley money and at his death the principal and interest due on this Prudential/Harley loan was about $1700.00, i.e. appellee's figure is a gross one and Prudential's is a net figure.

6. The letters were submitted by appellee in an apparent effort to show appellants, prior to the litigation, had only questioned the amount owed and not the fact appellee was entitled to the policy proceeds up to the amount remaining unpaid on the loans. One letter—from Darla Brown—in addition to generally questioning the amount owed, also states Harley told her within months of his death the loan from appellee was almost paid off.

7. The latter document appears to indicate Prudential viewed the Assignment, not as changing ownership of the policy from Harley to appellee, but as pledging part or all of its proceeds as collateral. We say "appears" because the acknowledgment sheet uses some code letters and numbers which the parties have not attempted to explain.

8. Appellants intend the document as support for their position, no part of the tendered funds can be considered cash surrender value proceeds.

(1916). In addition to an unconditional assignment, however, a policy of life insurance may also be pledged as collateral security for a debt [*Woofter v. Fourth National Bank of Tulsa*, 182 Okla. 483, 78 P.2d 683 (1938) ] and even when a writing appears to be an absolute assignment on its face, whether the assignment was made in consideration for the repayment of funds advanced to the insured by the assignee is generally considered a question of fact and the assignee's interest extends no farther than necessary to satisfy repayment of the debt. *Barry v. Hubbard*, 195 Okla. 112, 155 P.2d 512, 515 (1944). The assignor, and consequently, his designated beneficiary, still have an interest in a policy's proceeds that remains after the debt is satisfied. *Id.; Duty v. First State Bank of Oregon*, 71 Or.App. 611, 693 P.2d 1308, 1313 (1985), *review denied* 298 Or. 822, 698 P.2d 963, quoting *Males v. N.Y. Life Ins. Co.*, 48 A.D.2d 50, 367 N.Y.S.2d 575 (1975) (assignment of a life insurance policy as collateral security does not divest the insured or the beneficiary of their general interest in the policy, but merely creates a lien in favor of the assignee to the extent of the debt owed— once the debt is paid, the insurance continues in effect as if there had been no assignment). Finally, as is obvious from the above discussion, an assignee or pledgee of a life insurance policy in which the insured reserves the right to change the beneficiary has a right to the policy's proceeds superior to that of the beneficiary to the extent of the underlying debt. *McAllen State Bank v. Texas Bank & Trust Co.*, 433 S.W.2d 167, 169–171 (Tex. 1968).

¶ 14 Although appellee appears to argue ownership of the policy at issue was absolutely assigned to him by the Assignment, one of his own affidavits plainly indicates this was not the case and, at most, the proceeds of the policy were pledged as collateral/security for repayment of the loans remaining unpaid at Harley's death. Thus, even if the July 1984 writing could be construed as an unambiguous absolute assignment, under *Barry v. Hubbard, supra* and appellee's own summary judgment submission(s), only a collateral/security pledge situation existed and, his interest in the life insurance proceeds would extend no farther

than necessary to satisfy the debt remaining unpaid. Accordingly, summary judgment to appellee was improper unless the record shows the remaining debt equals or exceeds the amount due under the policy. The summary judgment materials do not so show.

¶ 15 To his first affidavit appellee attached two exhibits, a summary of the loans/payments and a six page ledger. Both reflect he charged a 10% per annum interest rate on the unpaid balance due at any given time. However, **the summary judgment materials nowhere expressly show, and appellee does not expressly aver in either of his affidavits, Harley agreed to pay 10% interest per year or that he ever communicated to Harley 10% annual interest would be charged.** At most, taking all inferences and conclusions to be drawn from the evidentiary materials in a light most favorable to appellants, appellee's affidavit(s), coupled with the ledger and summary, **only** show appellee was reflecting on his ledger (and the summary) he was charging 10% annual interest. Nothing we have been provided conclusively shows Harley knew this or, as noted, ever agreed to be bound by a 10% per year interest rate.

¶ 16 In plain words, the current record **fails** to show appellee and Harley agreed to a 10% per annum interest rate and because the record is silent as to any other agreed-to rate of interest, it must be assumed at this summary judgment stage there was no agreement as to the rate of interest. Therefore, although under 15 O.S.1991, § 263 whenever a loan of money is made it is presumed to be made upon interest unless otherwise stipulated in writing, when no contractual rate of interest is agreed upon our statutes provide for a 6% annual rate as the legal rate of interest. 15 O.S.1991, §§ 265 and 266. The necessity, at the summary judgment stage, of using a 6% per annum interest rate, coupled with another problem evident in appellee's summary judgment submissions, show that it is far from undisputed that the amount remaining unpaid equals or exceeds the amount tendered by Prudential in this interpleader suit.

¶ 17 In addition to the interest rate flaw, inconsistencies between the ledger and sum-

mary exist. The significant one—and only one we need detail—concerns a discrepancy between the ledger and summary as to how much was loaned. The ledger, at page one, contains a $1,000.00 loan entry in 1979 not reflected on the summary.[9] Depending on whether one includes the $1,000.00 loan shown on the ledger, but not on the summary, the documentation submitted by appellee shows either twenty (20) or nineteen (19) loans in the total principal amount of $26,371.83 or $25,371.83. Of course, because at the summary judgment stage we must view this discrepancy in appellants' favor, the extra $1,000.00 loan shown on the ledger must be excluded from any calculations leading to a remaining unpaid balance.[10]

¶ 18 When calculations are made excluding the $1,000.00 and a 6% per annum interest rate is used, less than $20,000.00 would remain unpaid as of December 1, 1995 (i.e. about a week before Harley's death). This balance is about $3,000.00 less than the $22,848.22 tendered by Prudential as due under the policy and over $14,000.00 less than the $34,251.57 appellee claims remained unpaid at the beginning of December 1995.[11] Thus, even if we assume appellants did not submit sufficient evidentiary material(s) to themselves create a substantial dispute that the remaining balance was less than the proceeds tendered, there was no necessity for them to do so because appellee did not carry his initial burden to show summary judgment entitlement on the issue and granting summary judgment in favor of appellee was error. *McMullen v. City of Del City, supra; Spirgis v. Circle K Stores, Inc., supra.*[12]

9. The other problem we have identified is that, in more than one instance, dates of loans reflected on the ledger do not match dates of the loans shown on the summary.

10. As one can see, the amount claimed owed by appellee, i.e. $34,251.57, is somewhere between $8900.00 and $7,800.00 more than the principal amount appellee claims was loaned (i.e. $26,371.83 or $25,371.83), depending on whether the extra ledger loan not shown on the summary is or is not used in the calculation. The large unpaid balance appellee relies on is the result of his using the 10% per annum interest rate, coupled with the facts the first loan was claimed made in 1977 (i.e. about 18 years before Harley's death) and no payment is shown being made after 1988—thus interest was simply adding up for a period of about seven years before Harley's death. We note for informational purposes both the ledger and summary show Harley made payments during his lifetime of $16,567.63.

11. Even if the $1,000.00 loan shown on the ledger but not on the summary is included in calculating a remaining balance on December 1, 1995, the balance would still be a few hundred dollars less than the $22,848.22 tendered by Prudential, when a 6% per annum rate of interest is used, rather than a 10% rate.

12. In their final trial court brief in regard to summary judgment appellants requested the trial judge, should he not grant their cross-motion, to continue a ruling on appellee's motion to permit them an opportunity to depose appellee and conduct other discovery. Rule 13(d) of the Rules for District Courts of Oklahoma, 12 O.S. Supp.1993, Ch. 2, App., allows for such a continuance under certain circumstances. It provides:

Should it appear from an affidavit of a party opposing the motion that he cannot for reasons stated present facts essential to justify his opposition, the court may deny the motion for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

No express ruling on the Rule 13(d) request is contained in the appellate record, but we assume it was in effect denied when summary judgment was granted to appellee and denied to appellants. Because we do not read appellants' petition in error or their certiorari submission, to directly claim error in regard to the practical denial of the Rule 13(d) request, we need not rule on the matter. However, even if we are incorrect and appellants have in some way properly preserved the issue on appeal, it lacks merit because of a failure to show an abuse of discretion by the trial judge. A refusal to grant a continuance under Rule 13(d) is subject to review by an abuse of discretion standard. *Bookout v. Great Plains Regional Medical Center,* 1997 OK 38, 939 P.2d 1131, 1134 f. n. 8. Although appellants claimed to be at a disadvantage concerning the particulars of the loan transactions because of their father, Harley's unavailability, and, therefore, they sought to be allowed additional time to take appellee's deposition and conduct other discovery, no showing was made they had used due diligence in conducting the discovery they sought. The appeal record shows about two months elapsed between filing of appellee's initial summary judgment motion in November 1996 and appellants' final summary judgment submission in January 1997. Appellants have not explained why during such time period they were not in a position to take appellee's deposition or obtain any other discovery. We note all

## PART IV. APPELLANTS WERE NOT ENTITLED TO SUMMARY JUDGMENT BECAUSE THE ASSIGNMENT UNAMBIGUOUSLY GRANTS AN INTEREST IN BOTH THE POLICY'S CASH SURRENDER VALUE AND ITS DEATH CLAIM PROCEEDS.

¶ 19 An assignment of a life insurance policy is an ordinary contract between the assignor and assignee [2A APPLEMAN, INSURANCE LAW AND PRACTICE § 1255 at 457 (1941)] and, as such, is interpreted under general contract principles. The overriding precept of contract interpretation is that the mutual intention of the parties at the time of contracting controls, as far as the same is ascertainable and lawful. 15 O.S.1991, § 152; *Mercury Inv. Co. v. F.W. Woolworth Co.*, 1985 OK 38, 706 P.2d 523, 529. If the language of a contract is clear and unambiguous, a court is to interpret it as a matter of law and, similarly, whether an ambiguity exists is a decision for the court. *Id.* at 534 f. n. 38; *Corbett v. Combined Communications Corp. of Oklahoma, Inc.*, 1982 OK 135, 654 P.2d 616, 617. In other words, where a contract is complete in itself and, viewed in its entirety, is unambiguous, its language is the only legitimate evidence of what the parties intended. *Mercury Inv. Co. v. F.W. Woolworth Co.*, *supra*, 706 P.2d at 529. However, where a written contract contains a statement of consideration which is a mere recital amounting to a receipt and is not contractual in form, parol evidence is admissible to show the true consideration. *Clarke v. Clarke*, 194 Okla. 455, 152 P.2d 908, 910 (1944); *Mercury Inv. Co. v. F.W. Woolworth Co.*, *supra*, 706 P.2d at 533 (where recital of consideration is not intended by parties to be contractual, parol evidence is admissible to show the true consideration for a contract and that consideration was greater or less than, or different from, that expressed in writing). Further, when only part of an agreement is reduced to writing and the writing itself shows it is not a complete recitation of the parties' agreement, it is competent to prove by parol any separate agreement on which the document is silent and which is not inconsistent with its terms. *National Mineral Co. v. A.L. Sterne Co.*, 198 Okla. 37, 174 P.2d 922, 925–926 (1946). Finally, as to life insurance assignments particularly, as noted in PART III, *supra*, even when a writing appears to be an absolute assignment on its face, whether the assignment was made in consideration for the repayment of funds advanced to the insured by the assignee is generally considered a question of fact. *Barry v. Hubbard*, *supra*, 155 P.2d at 515.

¶ 20 In our view, the Assignment is unambiguous, but shows on its face it is not a complete recitation of the entire agreement between appellee and Harley and, although it

---

of this for the following reason. As we explain in PART IV, *infra*, the July 1984 Assignment, although stating it was given for good and valuable consideration does not indicate the consideration given. Thus, under our extant case law, parol evidence was admissible to show the true consideration, because the writing's statement of consideration is a mere recital amounting to a receipt and is not contractual in form. *Clarke v. Clarke*, 194 Okla. 455, 152 P.2d 908, 910 (1944); *Mercury Inv. Co. v. F.W. Woolworth Co.*, 1985 OK 38, 706 P.2d 523, 533 (where recital of consideration is not intended by parties to be contractual, parol evidence is admissible to show the true consideration for a contract and that consideration was greater or less than, or different from, that expressed in writing). Therefore, in that appellants provided no contrary evidentiary material to counter appellee's first affidavit where he states, in essence, the Assignment was executed in consideration for all the loans, at present, the record appears undisputed it was given in consideration for the repayment of all the funds advanced by appellee to Harley. However, in view of our disposition of this appeal, which reverses summary judgment to appellee and remands for further proceedings, appellants should be in a position to depose appellee or conduct other reasonable discovery when the matter returns to the trial court—discovery which might uncover admissible evidence tending to show only some of the loans made to Harley were intended to be secured by the Assignment. Such a dispute was a central part of the case in *Barry v. Hubbard*, 195 Okla. 112, 155 P.2d 512 (1944), where the beneficiary of two life insurance policies claimed an assignment was made only to secure an advancement by the assignee to insured of approximately $400.00, while the assignee claimed the assignment was made in consideration of a much greater sum, i.e. about $8,000.00. In *Barry v. Hubbard* this Court affirmed a trial court judgment which held in favor of the beneficiary to the effect the assignment there was given only in consideration for an advancement of $400.00 and, therefore, that was all the assignee was entitled to from the policies' proceeds.

states it was given for good and valuable consideration, it is silent as to the nature of the true consideration. Therefore, it was appropriate for appellee, at this stage of the litigation, to offer, as he did through his affidavit(s), parol evidence the Assignment was given as a pledge of a collateral/security interest for the loans appellee asserts he made to Harley and to state what the true consideration was for the document's execution.

¶ 21 Here is what the writing unambiguously does. First, in its first sentence, it assigns the then current cash surrender value of the policy, and any cash surrender value that will vest in the future. Cash surrender value is the amount for which the insured may exchange the policy, i.e. surrender it, during the insured's lifetime. As we read the first sentence of the July 1984 Assignment, it plainly means, as long as the Assignment was in effect, appellee, not Harley, would be entitled to the cash surrender value if Harley surrendered the policy to Prudential during his lifetime. Even assuming appellants' position is correct that the cash surrender value is no longer available because Harley did not surrender the policy during his lifetime and, therefore, such amount cannot be considered a part of the death benefit proceeds (those proceeds payable upon the insured's death), summary judgment in favor of appellants would still not be proper because the Assignment clearly does something more than assign an interest in the policy's cash surrender value.

¶ 22 In its second sentence, the Assignment manifestly expresses an intent that appellee be given an interest in the death benefit proceeds payable upon Harley's demise when it authorizes Prudential to substitute him as the sole beneficiary of the policy. Appellants argue this sentence provides no assistance for appellee's death benefit proceeds claim because the authorization to substitute him as beneficiary cannot be considered irrevocable in light of the policy's terms which gave Harley the right to change a previous beneficiary designation, which appellants assert he did in March 1987. Appellants' view of the second sentence is much too narrow.

¶ 23 First, as we read the Assignment, its language concerning good and valuable consideration must be read as referring to both the cash surrender value's assignment and the authorization to substitute appellee as sole beneficiary of the policy. Second, appellants fail to realize that if, as appellee avers in his affidavit(s), the authorization to make him beneficiary was given for the consideration he says it was, he has a vested interest in the death claim proceeds up to the amount of the consideration given, notwithstanding appellants are generally correct that where an insured reserves the right to assign a life insurance policy or to change a beneficiary designation, a mere beneficiary has no vested interest in the policy proceeds prior to the insured's death.[13] This is so because an exception to the general rule exists. That is where the beneficiary, pursuant to a contract with the insured, has paid valuable consideration for being named the beneficiary. In such a circumstance, the beneficiary may be considered to have a vested interest in the policy proceeds up to the amount of the consideration. *See* 2 APPLEMAN, INSURANCE LAW AND PRACTICE § 922 (1941). In essence, if sufficient consideration supports the insured's promise to make a certain person the beneficiary or not to change the designation so as to deprive the named beneficiary of his/her interest in the policy's proceeds, that person takes a vested interest in the proceeds. *Id.* at p. 514.

¶ 24 Where a pledgee is named a beneficiary in a policy to secure a debt of the insured such a pledgee/beneficiary has a vested interest to the proceeds to the extent

---

**13.** *Duty v. First State Bank of Oregon,* 71 Or.App. 611, 693 P.2d 1308, 1313 (1985), *review denied* 298 Or. 822, 698 P.2d 963; *See also Baird v. Wainwright,* 1953 OK 192, 260 P.2d 1060, 1063 (where insured has right to change beneficiary the rights of a named beneficiary become vested on death of assured—during insured's lifetime right of named beneficiary is only contingent) and *Graham v. Farmers New World Life Ins. Co.,* 1992 OK CIV APP 133, 841 P.2d 1165, 1167 (absent some contractual obligation, court order or judgment, no beneficiary can have a vested interest in a life insurance policy until the proceeds of the policy become payable).

of the unpaid debt, which cannot be defeated by a subsequent change of beneficiary. *Detroit Life Ins. Co. v. Linsenmier*, 241 Mich. 608, 217 N.W. 919, 920–921 (1928). It has also been held that where an insured executes an instrument declaring that for "value received" he changed the beneficiary to make a portion of the policy proceeds payable to certain individuals, those individuals are not considered mere beneficiaries that may be changed at the will of the insured, but they are considered transferees of a vested property interest in the policy to the extent of the consideration given. *Stoll v. Mutual Ben. Life Ins. Co.*, 115 Wis. 558, 92 N.W. 277, 279 (1902). Therefore, in certain circumstances, it is appropriate to treat a beneficiary designation or an insured's promise to make someone the policy beneficiary, when the designation or promise is based on sufficient consideration, the same, for practical purposes, as an assignee or pledgee up to the amount of the consideration.

¶ 25 Such an analysis appears applicable here. This is so because the second sentence of the July 1984 Assignment can be considered Harley's promise to make appellee the sole beneficiary of the policy based on good and valuable consideration. It, thus, would have been improper for summary judgment to have been granted to appellants because appellee would have a vested interest in the death claim proceeds, at least up to the amount of the debt owing at Harley's demise that was intended to be secured by the force of the Assignment. Therefore, neither appellee or appellants were entitled to summary judgment on the present record.

## PART V. CONCLUSION.

¶ 26 Appellee was not entitled to summary judgment because the record does not show the policy's absolute assignment to him. At most, his claim to the death benefit proceeds extends only to the amount of the debt asserted to have been secured by the Assignment. Factual questions exist, at least, as to the exact sum owed to appellee by Harley at the time of the latter's death and whether the amount owed equals or exceeds the sum due under the life insurance policy. Appellants were not entitled to summary judgment

because the Assignment granted an interest in the death benefit proceeds for good and valuable consideration, and such interest would be vested and superior to appellants' claim to the proceeds up to the amount of the debt owing to appellee at Harley's death that was intended to be secured by the Assignment. Although appellee has not adequately shown the amount owed equals or exceeds the sum due under the policy, he has presented sufficient evidentiary material(s) to defeat appellants' claim to summary judgment.

¶ 27 The Court of Civil Appeals' memorandum Opinion is **VACATED**, the trial court judgment is **REVERSED** and the matter is **REMANDED FOR FURTHER PROCEEDINGS.**

¶ 28 KAUGER, C.J., SUMMERS, V.C.J., and HODGES, HARGRAVE, OPALA and ALMA WILSON, JJ., concur.

¶ 29 SIMMS and WATT, JJ., concur in result.

